[No. 19098–9–I. Division One. February 22, 1988.]

MITZI LIVINGSTON, *Appellant,* v. THE CITY OF EVERETT, *Respondent.*

*Thomas Cline,* for appellant.

*Bruce Jones, City Attorney,* and *Grant K. Weed, Assistant,* for respondent.

WILLIAMS, J.—Mitzi Livingston, individually and as guardian ad litem for her 4–year–old son James Anthony, brought this action against the City of Everett and Alfred McFarlen to recover damages for injuries suffered by Anthony when he was bitten by McFarlen's dogs. McFarlen was not served and has not appeared. The City counterclaimed for contribution against Livingston, individually, contending that she did not adequately supervise her son. The trial court granted Everett's motion for summary judgment dismissing the complaint and denied Livingston's motion for summary judgment dismissing the counterclaim. Livingston appeals both orders.

The facts as developed on the summary judgment motion are that in April 1984, McFarlen and his three doberman pinschers moved into the Everett, Washington, apartment of his girl friend, Tina Tiff. Thereafter, the following contacts about the dogs were made with the Everett Animal Control Department, an agency of the City of Everett:

1. April 19—complaint to the Department about McFarlen's dogs running loose in the neighborhood. An animal control officer went to the area, but did not see any dogs.

2. April 23—report to the Department that one of McFarlen's dogs bit the apartment maintenance man. An animal control officer investigated the report and told Tiff not to let the dogs run loose.

3. April 23—complaint by the manager of the apartment to the Director about McFarlen's dogs, no action taken.

4. April 24—two complaints by a neighbor and a tenant of the apartment to the Department about McFarlen's dogs running loose in the neighborhood, no action taken.

5. April or the first part of May—report by a tenant of the apartment to the Department that one of McFarlen's dogs had lunged at her young nephew, no action taken.

6. May 10—complaint to the Department by a neighbor about McFarlen's dogs running loose in the neighborhood. Animal control officers investigated and seized the three dogs.

7. May 11—the three dogs released to McFarlen.

On June 4, Tiff invited Livingston and her three children, ages 3, 4 and 6, into her apartment and showed them into a bedroom. Shortly thereafter, Livingston, who was unaware that two of the dogs were in the apartment, sent the children into the living room. Less than 1 minute later, the dogs knocked down James Anthony, biting and scratching him on the arms and head. The Department was called and an officer came and seized one of the dogs, with the other dog being taken the following day. Subsequently, both dogs were destroyed by the Department.

Livingston contends that the City was negligent in that "the Director either failed to discharge or did negligently

discharge a duty to protect the public from vicious animals causing injury to James Anthony and Mitzi Livingston." Complaint, in part. The City contends it is protected from the claim by the "public duty doctrine."

As a general proposition, the City is liable for the tortious conduct of its officers "to the same extent as if they were a private person or corporation". RCW 4.96.010. An exception is the "public duty doctrine," which provides:

> ". . . generally that for one to recover from a municipal corporation in tort it must be shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one)." *J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 303, 669 P.2d 468, 41 A.L.R.4th 86 (1983) (citing 18 E. McQuillin, *Municipal Corporations* § 53.04b, at 127 (3d ed. 1977).

*Bailey v. Forks,* 108 Wn.2d 262, 265, 737 P.2d 1257 (1987).

■ An exception to this doctrine is:

> where governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and the plaintiff is within the class the statute intended to protect (failure to enforce), *Campbell v. Bellevue,* [85 Wn.2d 1, 530 P.2d 234 (1975)] at 12–13; *Mason v. Bitton,* [85 Wn.2d 321, 534 P.2d 1360 (1975)] at 326–27; . . .

*Bailey,* at 268.

The Everett Municipal Code declares that it is the public policy of the City to enforce animal control measures for the protection of human health and safety and to prevent injury to property and cruelty to animal life. The code provides that it is unlawful to permit any animal to become at large, that any animal may be impounded and held when in violation of the code and that

> Any impounded animal shall be released to the owner or his authorized representative upon payment of impoundment, care and license fees if, in the judgment of the animal control officer in charge, such animal is not dangerous or unhealthy.

Everett Municipal Code 6.04.140(E)(1).

At this juncture, the facts supplied by Ms. Livingston satisfy the three requirements of the failure to enforce exception to the "public duty doctrine." First, the Animal Control Department is a governmental agency of the City with a duty to enforce statutory requirements, including not releasing dangerous animals. Like the government employees in *Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975) and *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975), the animal control officers had a duty to exercise their discretion when confronted with a situation which posed a danger to particular persons or a class of persons. Second, the Department had reason to believe that at least one of the dogs was dangerous. Third, the child came within the class the ordinance was intended to protect. *See Bailey,* at 269–70; *Campbell,* at 13; *Mason,* at 325–26; *Wright v. Brown,* 167 Conn. 464, 356 A.2d 176, 179 (1975).

In connection with this third requirement, the rule stated in *Bailey v. Forks, supra,* which involved an officer releasing a drunk person to drive on the public highway, is that:

> When statutes intend to insure the safety of the public highways, a governmental officer's knowledge of an actual violation creates a duty of care to all persons and property who come within the ambit of the risk created by the officer's negligent conduct. *See Mason v. Bitton,* 85 Wn.2d 321, 325–26, 534 P.2d 1360 (1975).

*Bailey,* at 270.

The same is true in this case, as persons in the apartment come within the ambit of the risk created by the release of the dogs. This observation also applies:

> Liability will not attach unless the governmental agent failed to take care "'commensurate with the risk involved.'" *Campbell,* at 12 (quoting *Runkel v. New York,* 282 A.D. 173, 176, 123 N.Y.S.2d 485 (1953)). Forks has only the limited duty of care to act reasonably within the framework of the laws governing the municipality and the economic resources available to it. In determining whether a municipality's act or failure to act was unreasonable, the trier of fact can take into account the

municipality's available resources and its resource allocation policy. Thus, under the instant facts, Forks would be subject to liability only if the police officer's failure to detain Medley was unreasonable under the circumstances.

*Bailey,* at 270–71.

The second issue is whether the trial court erred in not dismissing Everett's counterclaim for contribution based upon the assertion that James Anthony's injuries were proximately caused by Livingston's not adequately supervising him. The rule is that:

> In order for the conduct of parents in supervising their child to be actionable in tort, such conduct must rise to the level of willful and wanton misconduct; if it does not, then the doctrine of parental immunity precludes liability.

(Footnote omitted.) *Talarico v. Foremost Ins. Co.,* 105 Wn.2d 114, 116, 712 P.2d 294 (1986).

"Willful or wanton misconduct" means that the actor knew, or had reason to know, of circumstances which would inform a reasonable person of the highly dangerous character of his conduct. *Jenkins v. Snohomish Cy. PUD 1,* 105 Wn.2d 99, 105–06, 713 P.2d 79 (1986).

There is evidence that the apartment was small, the door opened directly into the living room and the bedroom entrance was hung with a curtain. The dogs were large and active. Although no proof was presented that Livingston had reason to know they were vicious (she denies even knowing that they were present), there is evidence of circumstances which would inform a reasonable person that it would be highly dangerous to leave a 4–year–old child alone in a relatively small room with two strange, active doberman pinscher dogs. Of course, this is a question of fact to be resolved from the evidence adduced at trial, the same as Livingston's case against the City.

The judgment of dismissal is reversed and the cause remanded for trial.

REVELLE, J. Pro Tem., concurs.

GROSSE, J. (concurring)—I agree with the majority that the "public duty doctrine" as most recently reiterated in *Bailey v. Forks*, 108 Wn.2d 262, 271, 737 P.2d 1257 (1987) compels reversal. I write separately only to emphasize that the majority opinion should not be read as holding that the City of Everett is liable as a matter of law for failure to impound the dogs, or for releasing them to the owner after they had once been impounded. Whether the City of Everett is liable depends on whether the governmental agent's acts or omissions were unreasonable under the circumstances; whether the agent failed to take care "'commensurate with the risk involved'". *Campbell v. Bellevue*, 85 Wn.2d 1, 12, 530 P.2d 234 (1975) (quoting *Runkel v. New York*, 282 A.D. 173, 123 N.Y.S.2d 485 (1953)). That determination must be made by the trier of fact after considering the City of Everett's statutory obligations in the context of the economic resources available to it and its resource allocation policy in the context of the facts of this case. *See Bailey v. Forks, supra.*

Review denied by Supreme Court May 31, 1988.