[Nos. 51959-0-I; 52202-7-I. Division One. July 26, 2004.]

JOHN A. HALLERAN, ET AL., *Appellants*, v. NU WEST, INC., ET AL., *Defendants*, THE STATE OF WASHINGTON, *Respondent*.

JOHN R. KALEAS, ET AL., *Appellants*, v. THE STATE OF WASHINGTON, *Respondent*.

702

*Louis "Larry" L. Barokas* and *John R. Tomlinson, Jr.* (of *Barokas Martin & Tomlinson*); *John P. Ferguson*; and *H. Richmond Fisher* (of *Win Win Resolution*), for appellants Halleran and Nelson.

*Michael J. Warren* (of *Warren & Duggan, P.L.L.C.*), for appellants Kaleas and Victor.

*Christine O. Gregoire, Attorney General,* and *Michael E. Tardif* and *Talis M. Abolins, Assistants*; and *Robert E. Lundgaard,* for respondent.

SCHINDLER, J. — The Securities Act of Washington, chapter 21.20 RCW, does not create a duty to protect individual investors from investment losses. Halleran and Kaleas,[1] investors in financial services company Nu West, Inc., rely on the legislative intent and failure to enforce exceptions to the public duty doctrine to argue that the Securities Division of the Washington State Department of Financial Institutions had a duty to protect them from Nu West's fraudulent activities. We conclude neither exception to the public duty doctrine applies and affirm the trial courts' summary judgment decisions to dismiss Halleran's and Kaleas' lawsuits.

## FACTS

The Securities Division of the Department of Financial Institutions (the Securities Division)[2] is responsible for administering the Securities Act of Washington.[3] The

---

[1] These parties are later identified in the description of the two lawsuits that have been consolidated in this appeal.

[2] The Securities Division became part of the Department of Financial Institutions in 1993.

[3] The Securities Division also administers the Franchise Investment Protection Act, chapter 19.100 RCW, the Business Opportunity Fraud Act, chapter 19.110

Securities Act contains provisions for registration of securities offered or sold in Washington and licensing individuals employed in the securities industry. The Securities Division is authorized to investigate matters related to securities licenses and registrations, revoke licenses and registrations, issue administrative cease and desist letters, and impose fines. The Securities Division can also refer matters for criminal prosecution.

Nu West, Inc. was a Bellevue financial services company that specialized in high interest rate loans. Georg Frey was the president and owner of Nu West. Nu West arranged short term loans at interest rates of 12 to 20 percent to property owners and developers who did not qualify for bank loans and acted as the escrow agent for the loans. Through advertisements, Nu West solicited investors to fund the loans and in return receive monthly payments at a high rate of return secured by a promissory note and deed of trust. Sometime in the early 1990s, Nu West began to combine the funds of several investors to make larger loans. The investors agreed to invest a specific amount in exchange for the right to receive a proportionate share of the monthly payment from the borrower. The escrow agreements identified the name of the borrower and the property securing the investor's proportionate interest in the deed of trust and promissory note. When the loan was funded, the loan documents, including a deed of trust and promissory note, were recorded by Nu West. The borrower then made payments to Nu West and Nu West paid the individual investors in proportion to the amount each investor funded.

■ In 1993, the Securities Division received a copy of a Nu West brochure soliciting investors to fund a portion of a loan and receive a high interest return secured by an interest in a deed of trust and promissory note. While a note secured by a deed of trust is exempt from the registration requirement, fractionalized interests in notes and deeds of

RCW, the Commodities Act, chapter 21.30 RCW, and the Escrow Agent Registration Act, chapter 18.44 RCW.

trust must be registered.[4] RCW 21.20.320. On July 7, 1993, Securities Examiner William Beatty sent a warning letter to Nu West explaining that the notes described in the brochure were "securities" under RCW 21.20.005, and that "[a]bsent the availability of an exemption, it is unlawful to offer or sell these securities unless they are registered."[5] Beatty's letter advised Frey that unless Nu West could establish an exemption, Nu West must "cease the offer and sale of the unregistered fractionalized deed of trust interests,"[6] and further offers and sales could be made only if there was an exemption or after registering. Beatty requested Nu West's assurance that it had stopped offering and selling fractionalized interests and asked for additional information including articles of incorporation, a list of loans sold to more than one investor and the names of investors.[7]

Frey acknowledged in a July 21 letter that Nu West offered fractionalized deed of trust investments in 1992 but assured Beatty that "Nu West, Inc. has ceased offering lists or advertisements of fractionalized deed of trust investments."[8] Along with his letter, Frey provided documents related to two different loans. Beatty concluded the loan documents did not indicate a violation of the Securities Act.

Approximately two years later, Examiner Beatty received an anonymous inquiry from a prospective investor about a Nu West advertisement. Beatty asked a Securities' Division investigator to contact Nu West to determine what investments Nu West was offering. The investigator responded to a Nu West advertisement but the information obtained did

---

[4] Combining funds from multiple investors to make a loan secured by a single deed of trust and assigning a proportionate interest in the deed of trust to each investor creates "fractionalized" interests in the deed of trust.

[5] Clerk's Papers (CP) at 287.

[6] CP at 570.

[7] Under RCW 21.20.435, for any violation of the Securities Act, the Securities Division can accept written assurance that there will not be a future violation.

[8] CP at 289. Frey also stated that Nu West was not aware these transactions were a securities violation and requested copies of the regulations to review with Nu West's attorney to consider registering as a broker-dealer.

not indicate that Nu West was involved in securities transactions subject to registration.

In 1996, the Securities Division received additional inquiries about Nu West's advertisements. After reviewing Nu West's promotional materials, Securities Examiner Victoria W. Sheldon sent a warning letter in October 1996 to Nu West stating that unless the investment interests in in promissory notes and deeds of trust were exempt, sold in an exempt transaction, or registered, Nu West may have offered an unregistered security in violation of chapter 21-.20 RCW. When Examiner Sheldon subsequently talked to Frey, he assured her Nu West had not offered or sold fractional interests in deeds of trust.

In 1997 and 1998, Securities Examiner Janet So continued to investigate Nu West. Examiner So contacted escrow companies and obtained records from a title company regarding Nu West's transactions. Examiner So also interviewed a prospective Nu West investor who provided some information about Nu West but did not file a complaint. So's investigation did not indicate any violation of the Securities Act.

In May 1999, Examiner Marlo DeLange interviewed Nu West investors from the 1990s and conducted a background check on Nu West and Frey. None of the investors interviewed had complaints about Nu West. Each had received timely monthly payments and had been paid in full. In August 1999, the Securities Division issued a subpoena to Nu West and Frey to ascertain whether Nu West was offering or selling securities as defined by the Securities Act.[9]

On October 18, 1999, the Securities Division for the first time received a complaint from a Nu West investor, Lowell Anderson. Although Anderson had received timely monthly payments, Nu West had not provided the documents he requested about his investment. On October 26, 1999, a

[9] Nu West responded to the Securities Division subpoena on November 16, 1999, but did not include the identity of its investors or real property loans in which Nu West sold fractionalized interests.

second Nu West investor, John O'Donnell, filed a complaint with the Securities Division. Like Anderson, O'Donnell complained that Nu West failed to provide requested documentation regarding his investment.

On November 22, Anderson told the Securities Division that recording stamps on a deed of trust and promissory note appeared to have been falsified. On November 23, 1999, Examiner Anthony Carter was assigned the Nu West file and instructed to obtain bank records, interview investors, and enforce the subpoena. After completing work on two other cases, Carter started working on the Nu West file in June 2000.

On June 7, 2000, Jean Cline, a third Nu West investor, filed a complaint about Nu West's failure to provide a recorded assignment of her deed of trust. The following week, the Securities Division arranged for an undercover investigation of Nu West. Posing as a prospective investor, the investigator obtained information that indicated Nu West was offering investments in loans and fractional interests in deeds of trust.

Examiner Carter interviewed Frey, obtained additional documentation from Frey, and deposed Nu West salesman Don Jones. In the course of the investigation, Carter verified that many of the recording stamps on the documents Frey filed were forged. On August 15, Carter referred the Nu West file for criminal prosecution.

In October 2000, the Securities Division issued a cease and desist order against Nu West, Frey, and Jones alleging Nu West had violated the Securities Act. On December 1, 2000, Frey committed suicide. Nu West investors lost in excess of $69 million.

In December 2000, John A. Halleran, Carolyn Halleran, John F. Halleran, Sheree Halleran, Susan Halleran, William Halleran, Joseph Nelson and Lynn Nelson (collectively, "Halleran") sued Nu West.[10] In September 2002, Halleran

---

[10] In September 1999, William Halleran invested with Nu West to buy a 40 percent interest in a deed of trust and Carolyn and John Halleran invested to

added the State of Washington's Securities Division as a defendant. Halleran alleged the Securities Division had a statutory duty to regulate the activities of Nu West by enforcing the Securities Act and preventing their investment losses. Relying on *Baerlein v. State*,[11] *McKasson v. State*,[12] and *Smith v. State*,[13] the trial court granted the State's summary judgment motion to dismiss Halleran's lawsuit.

In November 2002, Nu West investors John Kaleas, Helen Clark, and Joseph Victor, Sr. (collectively, Kaleas) sued the state of Washington's Securities Division. Kaleas alleged the Securities Division had a statutory duty to regulate the activities of Nu West and breached that duty. The trial court granted the State's motion for summary judgment to dismiss Kaleas's lawsuit.

Halleran and Kaleas appeal the trial courts' decisions to dismiss their lawsuits against the Securities Division.[14]

ANALYSIS

When reviewing a trial court's decision to grant summary judgment this court engages in the same inquiry as the trial court. *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 698, 952 P.2d 590 (1998). We will affirm a summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing CR 56(c)). All facts and reasonable inferences are considered in a light most favorable to the

purchase the other 60 percent interest. Between January and June 2000, Sheree and John F. Halleran, Carolyn and John A. Halleran, and Lynn M. and Joseph L. Nelson purchased interests in deeds of trust from Nu West.

[11] 92 Wn.2d 229, 595 P.2d 930 (1979).

[12] 55 Wn. App. 18, 776 P.2d 971 (1989).

[13] 59 Wn. App. 808, 802 P.2d 133 (1990).

[14] We consolidated the appeals in these two cases. *Halleran v. Nu West, Inc.*, No. 00-2-31981-9 (King County Super. Ct. Feb. 25, 2003) (Court of Appeals No. 51959-0-I) and *Kaleas v. State*, No. 02-2-30791-4 (King County Super. Ct. Mar. 28, 2003) (Court of Appeals No. 52202-7-I).

nonmoving party. *Id.* Questions of law are reviewed de novo. *Id.*

*The Public Duty Doctrine*

■■ Halleran and Kaleas contend the Securities Division violated its statutory duty to enforce the Securities Act to regulate and protect investors from losses. To prevail, Halleran and Kaleas must establish as a matter of law that the Securities Division owed a duty of care to them as investors in Nu West. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 528, 799 P.2d 250 (1990). The determination of whether a duty exists is a question of law. *Id.*

■ In negligence actions against the State, the court employs the public duty doctrine to determine if the duty breached by the State is owed to the public in general or to particular individuals.[15] *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988). The public duty doctrine precludes liability for the State's negligent conduct unless " 'the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general.' " *Taylor*, 111 Wn.2d at 163 (quoting *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 303, 669 P.2d 468 (1983)).[16]

■ In *Baerlein*, the Washington Supreme Court held that the Securities Act did not create a duty to protect individual investors from losses. *Baerlein*, 92 Wn.2d at 233; *accord McKasson*, 55 Wn. App. at 24.

Halleran and Kaleas argue *Baerlein* is distinguishable because the court relied on the statutory disclaimer of liability in RCW 21.20.360 for any inaccuracies in documents filed with the Securities Division to conclude there was no duty. The court's decision in *Baerlein* cannot be read so narrowly. The investors in *Baerlein* claimed that the

---

[15] The public duty doctrine limits the State's liability despite RCW 4.96.010's statutory waiver of sovereign immunity in Washington State.

[16] The public duty doctrine is based on the policy that "legislative enactments for the public welfare should not be discouraged by subjecting a governmental entity to unlimited liability." *Taylor*, 111 Wn.2d at 170.

Securities Division failed to exercise its regulatory authority to prevent fraudulent activity that resulted in their investment losses. The investors argued that the Securities Division breached its duty to them when it failed to issue stop orders against false and misleading advertisements and registration statements. While the court relied on RCW 21.20.360 in part for its conclusion, it held that the State had no duty to investors because the statutory scheme was designed to provide some protection to the public but not individual investors. The court examined the statute and the sections of the Securities Act relied on by the investors, including RCW 21.20.020, .100, .230, .280(5), .360, .450, and .900, and concluded that:

> The statutory provisions relied upon by plaintiffs do not indicate a clear legislative intent to impose a duty as to individual investors. Rather, they show an attempt by the legislature to bring order and regulation to the securities industry which will inure to the protection of investors as a class and the public generally.[17]

The court in *Baerlein* clearly states that the Securities Act, chapter 21.20 RCW, creates a duty to the public rather than to specific individuals. *Baerlein*, 92 Wn.2d at 231. A "regulatory statute imposes a duty on public officials which is owed to the public as a whole, and . . . such a statute does not impose any duties owed to a particular individual which can be the basis for a tort claim." *Baerlein*, 92 Wn.2d at 231 (citing *Halvorson v. Dahl*, 89 Wn.2d 673, 676, 574 P.2d 1190 (1978)).

■ There are four exceptions to the public duty doctrine that recognize a duty to an individual: (1) when the terms of a legislative enactment evidence an intent to identify and

---

[17] *Baerlein*, 92 Wn.2d at 233. The court also noted the large workload of the securities division relative to its small staff as "further evidence that the intent of the legislature was simply to provide some protection to the investing public and not to indemnify any person injured by a licensee under the securities act." *Id.* During the 1990s, between 27 and 41 employees worked in the Securities Division. During that time period, the Securities Division processed 114,000 securities registrations, issued approximately 700,000 licenses, received more than 2,500 complaints and conducted 950 investigations resulting in approximately 550 administrative orders, warning letters and criminal referrals.

protect a particular and circumscribed class of persons (legislative intent); (2) where governmental agents with a duty to enforce statutory requirements possess actual knowledge of a statutory violation but fail to take corrective action, and the plaintiff is within the class the statute intended to protect (failure to enforce); (3) when governmental agents fail to exercise reasonable care after assuming a duty to warn or come to the aid of a particular plaintiff (rescue doctrine); or (4) where a relationship exists between the governmental agent and any reasonably foreseeable plaintiff, setting the injured plaintiff off from the general public and the plaintiff relies on explicit assurances given by the agent or assurances inherent in a duty vested in a governmental entity (special relationship). *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987). Halleran and Kaleas rely on the legislative intent and failure to enforce exceptions to argue that the Securities Division had a duty to prevent their Nu West investment losses.

*Legislative Intent Exception*

■ The legislative intent exception applies where a regulatory statute contains " 'a clear intent to identify and protect a particular and circumscribed class of persons.' " *Baerlein*, 92 Wn.2d at 231 (quoting *Halvorson*, 89 Wn.2d at 676). Halleran claims RCW 21.20.450 indicates a clear legislative intent that the Securities Division has a duty to enforce the Securities Act to protect investors and defines investors as a particular class.[18]

■ The only reference to the protection of investors in RCW 21.20.450(1) states: "No rule, form, or order may be made unless the director finds that the action is necessary or appropriate in the public interest or for the protection of investors and consistent with the purposes fairly intended by the policy and provisions of this chapter." While this statutory provision limits the Securities Division's rule-making authority, it does not create a duty to enforce the

---

[18] Kaleas concedes this exception does not apply. Kaleas Br. at 12 n.4.

Securities Act to protect investors. *Baerlein*, 92 Wn.2d at 233.

The court in *Baerlein* reviewed several sections of the Securities Act, including RCW 21.20.450, and concluded there was no clear legislative intent to impose a duty to protect individual investors. In reaching this conclusion, the court compared the Securities Act to the statutory scheme in *Halvorson*, where the court found there was a clear statement of intent in the declaration of purpose. Unlike the statutory scheme in *Halvorson*, the Securities Act does not contain a declaration of purpose and in the preamble of the predecessor of the Securities Act there was no indication of an intent to protect individual investors. *Baerlein*, 92 Wn.2d at 234; *see also* ch. 21.20 RCW.

The other authority Halleran cites to support applying the legislative intent exception is *Livingston v. City of Everett*, 50 Wn. App. 655, 751 P.2d 1199 (1988) and *State v. Williams*, 17 Wn. App. 368, 563 P.2d 1270 (1977). Halleran's reliance on *Livingston* and *Williams* is misplaced. *Livingston* involved the failure to enforce exception, not the legislative intent exception.[19] *Williams* was an appeal from criminal convictions for the fraudulent sale of securities and the sale of unregistered securities. While the court in *Williams* stated that the purpose of the Securities Act was "[t]he need for protection through disclosure," *Williams*, 17 Wn. App. at 371, the issue in *Williams* was whether fractional interests in patents and patent proceeds were "securities" within the meaning of the Securities Act. *Williams* was decided before *Baerlein* and it did not address whether there was a clear legislative intent in the Securities Act to impose a duty to protect individual investors.

The Securities Act does not contain an express legislative intent to identify and protect a particular and circumscribed class of persons and the legislative intent exception

---

[19] The standard for a statute to identify a "particular and circumscribed class of persons" for the legislative intent exception is more stringent than what is required to identify a class of persons for the failure to enforce exception. *Waite v. Whatcom County*, 54 Wn. App. 682, 688, 775 P.2d 967 (1989).

to the public duty doctrine does not apply. *Baerlein*, 92 Wn.2d at 233-34.

*Failure to Enforce*

Halleran and Kaleas' primary argument is that the failure to enforce exception applies. They argue the Securities Division had actual knowledge of a statutory violation by Nu West but failed to take prompt corrective action.

■ ■ The failure to enforce exception is established when: (1) there is a statutory duty to take corrective action; (2) governmental agents responsible for enforcing the statutory requirements possess actual knowledge of a statutory violation; (3) they fail to take corrective action; and (4) the plaintiff is within the class the statute intended to protect. *Smith*, 59 Wn. App. at 814. This exception is narrowly construed. *Atherton Condo.*, 115 Wn.2d at 531. The plaintiffs have the burden to establish all four elements of the failure to enforce exception. *Id.*

■ For the failure to enforce exception to apply, government agents must have a mandatory duty to take specific action to correct a statutory violation. *Smith v. City of Kelso*, 112 Wn. App. 277, 282, 48 P.3d 372 (2002). Such a duty does not exist if the government agent has broad discretion about whether and how to act. *Id.* To show this exception applies, Halleran and Kaleas must establish that the Securities Act mandates the Securities Division to take "specific corrective action."

■ In *McKasson*, this court considered whether the State had a mandatory duty to take corrective action to enforce the Securities Act. The investors in *McKasson* argued that the Securities Division was liable for their losses because it did not enforce a Securities Division rule that required an investment firm to submit an audited financial statement. We held there was no duty to enforce the Securities Act because the Act does not contain provisions that required specific corrective action.[20] This court

---

[20] There was no "mandatory duty for the Division to take specific action in response to the failure of a licensee to file audited statements" because the

distinguished other failure to enforce cases, including *Bailey v. Town of Forks*,[21] *Campbell v. City of Bellevue*,[22] and *Livingston v. City of Everett*,[23] where there was a specific legislative directive to take corrective action and concluded there was no similar directive in the Securities Act:

> In each of these "failure to enforce" cases, there was a specific directive to the governmental employee as to what should be done. . . . [T]here is no such directive in the securities act statutes or the associated regulations. Instead, the statutes and the regulations are replete with "mays", and throughout the statutes, broad discretion is vested in the director.

*McKasson*, 55 Wn. App. at 25.

Halleran and Kaleas attempt to distinguish *McKasson* based on the court's reliance on the Securities Act's disclaimer of liability for the accuracy of documents filed with the Securities Division.[24] But the *McKasson* decision relied on the entire statutory scheme of the Securities Act and the lack of any specific directive to take corrective action to conclude there was no duty to enforce. *McKasson*, 55 Wn. App. at 24. The decision and analysis in *McKasson* that the Securities Act does not require the Securities Division to take specific corrective action is equally applicable here.

Halleran and Kaleas also argue that if actual knowledge had been present in *McKasson* or *Smith v. State*, 59 Wn. App. 808, 802 P.2d 133 (1990), this court would have reached a different conclusion and decided the failure to enforce exception applied and the Securities Division had a duty to act.[25]

Securities Act gave the Securities Division broad discretion. *McKasson*, 55 Wn. App. at 24.

[21] 108 Wn.2d 262, 737 P.2d 1257 (1987).

[22] 85 Wn.2d 1, 530 P.2d 234 (1975).

[23] 50 Wn. App. 655, 751 P.2d 1199 (1988).

[24] RCW 21.20.360.

[25] Halleran and Kaleas also claim RCW 21.20.450 establishes a statutory duty to protect investors. As previously discussed, while RCW 21.20.450(1) gives the

In support of this argument, Halleran and Kaleas point to the statement in *McKasson* that "[t]here was no actual knowledge of fraud being practiced upon the investors, which would be the equivalent in the securities context of a [sic] 'inherently dangerous and hazardous condition' in the building context," *McKasson*, 55 Wn. App. at 27 (quoting *Taylor*, 111 Wn.2d at 171-72). But Halleran and Kaleas ignore the context of this statement in *McKasson* and the requirement of a specific directive to take corrective action. As explained in *McKasson*, even where a public official knows of an inherently dangerous and hazardous condition, the statute must require the public official to take specific corrective action.

> "As to the performance of building code inspections, a duty shall continue to be recognized where a public official knew of an inherently dangerous and hazardous condition, *is under a duty to correct the problem* and fails to meet this duty."

*McKasson*, 55 Wn. App. at 27 (emphasis added) (quoting *Taylor*, 111 Wn.2d at 171-72). Because the *McKasson* court concluded the Securities Division did not have a duty to take specific corrective action, actual knowledge of fraud would not have changed the outcome in *McKasson*.

In *Smith*, this court concluded the failure to enforce exception did not apply because the actual knowledge element was not met. The court did not address any of the other elements or indicate that the absence of actual knowledge was the only obstacle to application of the failure to enforce exception. *Smith*, 59 Wn. App. at 815.

Halleran and Kaleas have not shown that the Securities Division had a duty to take specific corrective action in response to a Securities Act violation. Because they have failed to establish one of the four elements of the failure to

---

Department of Financial Institutions the rule-making authority to administer the Securities Act, it does not require any specific corrective action to enforce the Act's provisions.

enforce exception, we conclude the exception does not apply. *Atherton Condo.*, 115 Wn.2d at 531.[26]

*Common Law Concepts of Duty and Foreseeability*

██ ██ Alternatively, Halleran contends this court should abandon the public duty doctrine and analyze whether the Securities Division had a duty to protect investors from losses based on the common law concepts of duty and foreseeability. We decline to do so because this court is bound by controlling precedent. *See State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997). However, we note Halleran's contentions that the harm suffered by the investors was reasonably foreseeable and that the Securities Division had a duty to prevent the harm conflate the concepts of duty and foreseeability. Foreseeability limits the scope of a duty, but it does not independently create a duty. *See Hansen v. Friend*, 118 Wn.2d 476, 483, 824 P.2d 483 (1992).[27]

## CONCLUSION

The Securities Act of Washington does not create a duty to protect individual investors from investment losses. We conclude that the public duty doctrine applies in this case and that neither the legislative intent exception nor the failure to enforce exception creates a duty for the Securities Division to protect individual investors from investment losses. We affirm the trial court's summary

---

[26] In the alternative, Halleran and Kaleas argue that material issues of fact about the Securities Division's actual knowledge of a violation require reversing summary judgment. Even assuming there are material issues of fact, because Halleran and Kaleas cannot establish as a matter of law that the Securities Division has a duty to take specific corrective action, the failure to enforce exception does not apply.

[27] The cases relied on by Halleran do not hold otherwise. For instance, in *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77 (1985), the court discussed two circumstances in which government entities can be said to owe a duty to a particular plaintiff. Those two circumstances focused on the relationship between the defendant and the injured party, whether it is a special relationship between the parties or legislation mandating that one party protect a particular and circumscribed class of persons, and did not depend solely on foreseeability.

judgment decisions to dismiss Halleran's and Kaleas' lawsuits.

Cox, C.J., and APPELWICK, J., concur.

Review denied at 154 Wn.2d 1005 (2005).