

2014 NOV 10  AM 8:20

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| BRIAN BESAW, individually, and<br>CARMEN BESAW, individually and<br>the marital community composed<br>thereof,<br><br>    Appellants.<br><br>    v.<br><br>PIERCE COUNTY, a county<br>corporation,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 72362-6-I<br><br><br><br><br><br><br><br>UNPUBLISHED OPINION<br><br>FILED: November 10, 2014 |

VERELLEN, A.C.J. — When a plaintiff alleging damages resulting from a dog bite does not establish that the county failed to enforce animal control ordinances designating that dog as potentially dangerous and requiring proper enclosure of the dog, no liability extends to the county under the public duty doctrine. Here, the record shows that the county lacked a sufficient basis to designate the dog as a potentially dangerous animal under the applicable ordinances. And even if it did, the undisputed facts establish that the county's failure to enforce these ordinances did not proximately cause the injuries; rather, the owner's negligence in allowing the dog to escape a proper enclosure resulted in the plaintiff being bitten. Accordingly, we affirm the trial court's grant of summary judgment and dismissal of the claims against Pierce County.

FACTS

On July 5, 2011, Brian Besaw was bitten by a white pit bull owned by his neighbors, the Johnsons. Besaw went to the Johnsons' home to offer to lend his lawn mower to them after Kristy Johnson asked to borrow it. Besaw was aware that the Johnsons owned two pit bulls, a brown one and a white one, and assumed they were in the house at the time because they were not out in the yard and the gate was open. According to Besaw, if the dogs were inside, the Johnsons would leave the gate open. When he knocked on the door, a friend of the Johnsons answered the door and came outside. Besaw told him they could use his mower, and the friend went back inside the house to find Kristy. When he opened the door to go back inside, the white pit bull came out, jumped on Besaw, and bit him on the wrist. Besaw drove to the emergency room and was treated for a laceration on his arm, which healed within three weeks.

The next day, Besaw reported the incident to Pierce County Animal Control (Animal Control). Animal Control officers made unsuccessful attempts to contact the Johnsons and serve on them a declaration of a potentially dangerous animal. The dogs had been reported running loose in the neighborhood. On September 20, 2011, an Animal Control officer contacted Calvin Johnson at his home. Johnson put the dogs in his truck and told the officer he was taking the dogs away and was moving in two weeks. After that, no one had further contact with the Johnsons.

On August 26, 2011, Besaw sued the Johnsons and Pierce County for damages resulting from the dog bite. He claimed that the county was negligent in its supervision and control of dangerous and potentially dangerous animals and failed to

enforce ordinances regarding control of such animals. Pierce County moved for summary judgment and sought dismissal of the claims, contending that under the public duty doctrine, it owed no duty to Besaw at the time he was bitten, and that Besaw failed to establish that it breached a duty that proximately caused the claimed harm. The trial court granted Pierce County's motion for summary judgment and dismissed the claims against it with prejudice.

Besaw appeals.

## ANALYSIS

Besaw contends that the trial court erred by dismissing his claims on summary judgment because there were disputed issues of material fact on whether the county failed to enforce animal control ordinances governing potentially dangerous dogs, an exception to the public duty doctrine that would create a legal duty to Besaw from the county. We disagree. On this record, Besaw fails to show that Pierce County had sufficient notice that this particular pit bull had engaged in conduct to warrant designating it as a potentially dangerous animal under the applicable animal control ordinances. And even if it did, the undisputed facts establish that the county's failure to enforce the ordinance did not proximately cause Besaw's injuries. Accordingly, the trial court properly concluded as a matter of law that Pierce County was not liable for Besaw's injuries and dismissed the claims.

Under the public duty doctrine, a government's obligation to the public is not a legal duty of care; instead, a government can be liable only for breaching a legal duty

owed individually to the plaintiff.[1] But a legal duty of care may be attributed to a government entity if one of the four exceptions apply: (1) the legislative exception, (2) the failure to enforce exception, (3) the rescue doctrine, and (4) the special relationship exception.[2] Whether a government entity owes a legal duty to the plaintiff under the public duty doctrine is a question of law, reviewed de novo.[3]

Besaw contends that Pierce County's actions fell within the failure to enforce exception to the public duty doctrine and thereby created a legal duty to him. Under the failure to enforce exception, the government's obligation to the general public becomes a legal duty to the plaintiff when (1) government agents who are responsible for enforcing statutory requirements actually know of a statutory violation, (2) the government agents have a statutory duty to take corrective action but fail to do so, and (3) the plaintiffs are within the class the statute intended to protect.[4] The plaintiff bears the burden of establishing each element of this exception, and the court must construe the exception narrowly.[5]

Besaw argues that there were disputed issues of fact about whether Pierce County knew that the animal ordinances were being violated. Under the relevant ordinances in effect at the time, a "potentially dangerous animal" is defined as one which

---

[1] Babcock v. Mason County Fire Dist. No. 6, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001).

[2] Id. at 786.

[3] Gorman v. Pierce County, 176 Wn. App. 63, 75, 307 P.3d 795 (2013), review denied, 179 Wn.2d 1010, 316 P.3d 496 (2014).

[4] Bailey v. Town of Forks, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987).

[5] Gorman, 176 Wn. App. at 77.

when unprovoked: (a) inflicts bites on a human, domestic animal or livestock either on public or private property, or (b) chases or approaches a person upon the streets, side-walks, or any public grounds or private property in a menacing fashion or apparent attitude of attack, or (c) any animal with a known propensity, tendency, or disposition to attack unprovoked or to cause injury or otherwise threaten the safety of humans, domestic animal, or livestock on any public or private property.[6]

Animal Control could declare an animal potentially dangerous if there is probable cause to believe the animal falls within this definition. Such a determination must be based upon:

1. The written complaint of a citizen who is willing to testify that the animal has acted in a manner which causes it to fall within the definition of Section 6.02.010 X; or

2. Animal bite reports filed with the County or the County's designees; or

3. Actions of the animal witnessed by any animal control officer or law enforcement officer; or

4. Other substantial evidence.[7]

Once such a designation is made, the animal is subject to permitting, fees, and the requirements of proper enclosure.[8]

Besaw contends that Pierce County was aware that the Johnsons' dogs were subject to these ordinances but failed to take action to designate them as such and ensure their containment. He points to several complaints about the dogs dating back to 2008 that necessitated a potentially dangerous designation and the county's failure to take corrective action. Pierce County responds that none of these

---

[6] PCC 6.02.010(X).

[7] PCC 6.07.010(A).

[8] PCC 6.07.020.

5

complaints specifically identified the white pit bull that bit Besaw or identified conduct that fell within the definition of "potentially dangerous." The record shows that there was only one bite complaint involving the Johnsons' dogs in June 2011. According to the incident report, a neighbor reported that his adult daughter had been bitten by the Johnsons' dog, but did not specify that it was the white dog. The record further shows that the alleged victim refused to cooperate with the investigating Animal Control officer and therefore did not provide Animal Control with a sufficient basis to designate it as a potentially dangerous animal under the ordinance.[9] The only other incident of aggressive behavior toward a human cited by Besaw involved a brown dog owned by a Mr. Russo, who moved before the Besaw bite incident.[10] The remaining incidents cited by Besaw did not demonstrate a propensity to attack unprovoked or to cause injury but were largely reports of the dogs running loose. At most, they involved chasing and "scaring" other animals but did not involve biting or actual attacks on animals. Thus, on this record, Besaw failed to establish sufficient facts, much less disputed facts, showing that Pierce County was aware that its ordinances were being violated and failed to enforce them. The trial court therefore properly concluded that as a matter of law, Besaw failed to establish that the failure to enforce exception to the public duty doctrine applied here.

But even if there were an issue of fact about whether Pierce County had information that the dog's behavior fell within the definition of "potentially dangerous"

---

[9] See Clerk's Papers at 78 (incident report stating, "Victim is 36 [years old] and did not want to even report this incident."); Clerk's Papers at 275-76 (officer personally spoke with the alleged victim on the phone and she refused to cooperate).

[10] Clerk's Papers at 77 (incident report stating "brown pit bull charged [victim] after her barking and lunging at her").

6

and failed to enforce the applicable ordinances, summary judgment was still proper. As the trial court concluded, Besaw cannot establish that this alleged failure of the county to act proximately caused his injuries. If Pierce County did in fact designate the dog as potentially dangerous, at most, the county could have required the Johnsons to obtain permits, pay fees, and properly enclose the dog. A "proper enclosure" requires that the animal "be confined indoors or in a securely enclosed and locked pen or structure."[11] When Besaw approached Johnson's property the day of the dog bite, the white pit bull was in fact confined indoors as required by the ordinance. But despite the proper enclosure inside the house, the dog escaped due to Johnson's negligence, not the county's, resulting in injury to Besaw. Accordingly, on this record, Besaw fails to establish that Pierce County's breach of the claimed duty owed to him proximately caused his injuries. The trial court properly granted summary judgment and dismissed the claims.

The cases upon which Besaw relies are distinguishable and do not require a different result. In Gorman v. Pierce County, the court held that the failure to enforce exception to the public duty doctrine applied in a dog bite case where, as here, the plaintiff alleged that the county was liable for failing to classify the biting dog as a potentially dangerous dog under the applicable ordinances.[12] But in Gorman, Pierce County apparently conceded the first element of the failure to enforce exception, that it actually knew of the statutory violation, as evidenced by several complaints of

---

[11] PCC 6.02.010(Z).

[12] 176 Wn. App. 63, 77, 307 P.3d 795 (2013), review denied, 179 Wn.2d 1010, 316 P.3d 496 (2014).

aggressive behavior exhibited by the same dog who bit the plaintiff.[13] The evidence showed that the dog had aggressively confronted a neighbor, preventing the neighbor and their son from leaving their home, confronted the plaintiff after chasing her dogs in the house and bit her clothing, requiring her to use a stick to fend off the dog and retreat inside her home, and chased a child on rollerblades.[14] On appeal, Pierce County only contested the second element of the failure to enforce exception, that it had no duty to take corrective action, arguing that it had discretion to classify an animal as potentially dangerous.[15] The court disagreed, concluding that the ordinance in effect at the time created a mandatory duty to classify a dog as potentially dangerous upon any valid report of a dangerous dog.[16] But here, Besaw has failed to establish a factual basis for the first element, that the county actually knew of a statutory violation, rendering unnecessary an inquiry into this second element. The Gorman holding therefore has no application here.

In Livingston v. City of Everett, the court also found that the failure to enforce exception applied in a dog bite case, but it is likewise distinguishable.[17] Unlike here, in Livingston, there was evidence that established that the city actually knew of the statutory violations. The evidence there showed that there were at least two prior

---

[13] Id.

[14] Id. at 70-71.

[15] Id. at 77.

[16] Id. at 81.

[17] 50 Wn. App. 655, 751 P.2d 1199 (1998).

complaints that the same dog that attacked the plaintiffs had bitten another person and lunged at a young child.[18]

Because Besaw failed to show that Pierce County breached a duty owed to him and proximately caused his injuries, summary judgment was proper. We affirm.

WE CONCUR:

---

[18] Id. at 657.