IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ANGELA M. BARD and WILLIAM BARD, individually and as legal guardians of minor J.D.B.; JESSICA L. BARD; JOHN M. BEUTLER; STACY R. MULLENDELAND and ERIC DELAND, individually and as legal guardians of minors A.S.M.D. and C.R.M.D.; DONYA C. GRANT and WELDON J. GRANT, individually and as legal guardians of minors H.B.G, K.M.G, M.A.G and R.K.G.; CEANNA N. HEIT; MELANIE K. LONG, individually and as legal guardian of minors A.D.L., A.R.L. and I.R.L; ILYANA A. LONG; HOLLY A. MILLS; CHERYL T. PRITCHETT and JOEL PRITCHETT, individually and as legal guardians of minors I.G.P. and M.E.P.; JILL E. SAVERY and JAMES SAVERY, individually and as legal guardians of minors M.E.S. and S.L.S.; ARICA L. SMITH-SIMMER, individually and as legal guardian of minors K.R.M.S. and N.D.S.; ILLYEANNA WOLFSTORM, individually and as legal guardian of minor I.S.W.; JAMES L. WOODARD; and DOES 1-250; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 79475-2-I DIVISION ONE UNPUBLISHED OPINION |
| Appellants, | ) ) | |
| v. | ) ) | |
| MONSANTO COMPANY, a Delaware corporation; SOLUTIA, INC., a Delaware corporation; | ) ) ) | |

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

PHARMACIA LLC, a Delaware )
limited liability corporation, f/k/a )
Pharmacia Corporation; STATE OF )
WASHINGTON; MONROE )
SCHOOL DISTRICT NO. 103 d/b/a )
MONROE PUBLIC SCHOOLS; )
UNION HIGH SCHOOL DISTRICT )
NO. 402; SNOHOMISH HEALTH )
DISTRICT; and ROES 1-10; )
)
     Respondents. )
             )

HAZELRIGG, J. — A group of students, parents, teachers, and staff from Sky Valley Education Center seek reversal of an order granting summary judgment for Snohomish Health District (SHD). They argue that the court erred in ruling that their claims against SHD were barred by the public duty doctrine and that RCW 43.20.050 does not create an implied statutory cause of action. Because the appellants did not show that an exception to the public duty doctrine applied and the statute does not evidence legislative intent to create a remedy for a protected class, we affirm.

FACTS

In 2018, a group of 44 students, parents, teachers, and staff from Sky Valley Education Center (collectively, "the Bards") sued Monsanto Company, Solutia, Inc., and Pharmacia, LLC (collectively, "Monsanto"); Monroe School District No. 103 and Union High School District No. 402 (collectively, "the District"); the State of Washington; and the Snohomish Health District (SHD). The Bards alleged that Sky Valley was contaminated with polychlorinated biphenyls and related toxic chemicals (collectively, "PCBs") in electrical fixtures and construction materials

installed before PCBs were banned due to toxicity. They claimed that they sustained serious injuries due to chronic exposure to PCBs at the school. The Bards raised product liability claims against Monsanto, alleging that it was the only manufacturer of PCBs in the United States. They claimed that the State and District negligently failed to provide, maintain, and supervise a reasonably safe school building. Finally, the Bards alleged that SHD negligently allowed Sky Valley to remain in use by failing to inspect school buildings and enforce environmental regulations.

The State moved for dismissal, arguing that it had no duty to supervise a school district's building maintenance. The court granted the motion and dismissed the State from the suit, finding that the Bards' claims against the State were barred by the public duty doctrine. SHD then moved for summary judgment, arguing that, like the claims against the State, the Bards' claims against SHD were barred by the public duty doctrine as a matter of law. The court granted summary judgment for SHD. The Bards appealed the summary judgment order.

ANALYSIS

This court reviews a trial court's order granting summary judgment do novo. Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. (citing CR 56(c)). When making this determination, courts view all facts and reasonable inferences in the light most favorable to the nonmoving party. Id. When a party has moved for summary judgment, "an adverse party may not rest upon the mere

allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." CR 56(e).

I.      Public Duty Doctrine

In Washington, all local governmental entities are liable for damages arising from their tortious conduct to the same extent as if they were private persons or corporations. RCW 4.96.010(1). A fundamental element of any negligence action, including an action against a government entity, is the duty owed by the defendant to the plaintiff. Meaney v. Dodd, 111 Wn.2d 174, 178, 759 P.2d 455 (1988). "When the defendant in a negligence action is a governmental entity, the public duty doctrine provides that a plaintiff must show the duty breached was owed to him or her in particular, and was not the breach of an obligation owed to the public in general, i.e., a duty owed to all is a duty owed to none." Munich v. Skagit Emergency Commc'n Ctr., 175 Wn.2d 871, 878, 288 P.3d 328 (2012).

The public duty doctrine has four recognized exceptions: (1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship. Id. at 879. "If any one of the exceptions applies, the government is held as a matter of law to owe a duty to the plaintiff." Id.

A. Failure to Enforce

The Bards first argue that the trial court erred in ruling that the failure to enforce exception to the public duty doctrine did not apply. The failure to enforce exception applies "where governmental agents responsible for enforcing statutory

requirements possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and the plaintiff is within the class the statute intended to protect." Bailey v. Town of Forks, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987). The plaintiff bears the burden to establish each of these elements. Ehrhart v. King County, 195 Wn.2d 388, 402, 460 P.3d 612 (2020). The duty to act must be "a mandatory duty to take a specific action to correct a known statutory violation. . . . 'Such a duty does not exist if the government agent has broad discretion about whether and how to act.'" Donohoe v. State, 135 Wn. App. 824, 849, 142 P.3d 654 (2006) (quoting Halleran v. Nu West Inc., 123 Wn. App. 701, 714, 98 P.3d 52 (2004)).

The Bards contend that SHD's statutory duty to take corrective action stems from RCW 43.20.050. This statute provides that "[a]ll local boards of health . . . shall enforce all rules adopted by the state board of health." RCW 43.20.050(5). Chapter 43.20 RCW incorporates RCW 43.70.190 and RCW 43.70.200, which detail enforcement options available to a local health district. These statutes provide that a local health board "may bring an action to enjoin a violation or the threatened violation of any of the provisions of the public health laws of this state or any rules or regulation made by the state board of health or the department of health pursuant to said laws," "may institute any civil legal proceeding authorized by the [law]," or may request that the secretary of health take legal action to enforce public health laws, rules, and regulations. RCW 43.70.190; RCW 43.70.200.

SHD argues that the enforcement options detailed in RCW 43.70.190 and RCW 43.70.200 do not create a mandatory duty to act because they list only

- 5 -

discretionary actions that the health board "may" take. In <u>McKasson v. State</u>, we found no mandatory duty to take specific action when the relevant statutes and regulations were "replete with 'mays,' and throughout the statutes, broad discretion is vested in the director." 55 Wn. App. 18, 24–25, 776 P.2d 971 (1989). In <u>Forest v. State</u>, Division Two of this court found no mandatory duty to take specific action in a statute indicating that "parole officers 'may' arrest for parole violations." 62 Wn. App. 363, 369–70, 814 P.2d 1181 (1991). Likewise, the statutes at issue here specify actions that a board of health "may" take, indicating that the actions are discretionary.

At oral argument, the Bards contended that, although the board is not restricted to one specific action, the statute providing that the local board of health "shall enforce" the rules mandates that the board take one of the three enumerated discretionary enforcement actions. SHD argues that the "shall enforce" language does not create a duty to take corrective action because it "does not specify what must be done to enforce a particular violation or mandate a specific corrective action." It argues that "many statutory/regulatory schemes in Washington provide that a particular government officer or agency 'shall enforce' laws and regulations[] without prescribing a specific enforcement action" but "no Washington court has ever held that the general phrase 'shall enforce' is sufficient to satisfy the [failure to enforce] exception." One such statute cited by SHD is RCW 19.27.050, which provides that "[t]he state building code required by this chapter shall be enforced by the counties and cities." Washington courts have found that cities did not owe a duty to individuals under the building code. <u>Rosen v. City of Tacoma</u>, 24 Wn.

App. 735, 740–41, 603 P.2d 846 (1979); Weston v. New Bethel Missionary Baptist Church, 23 Wn. App. 747, 753, 598 P.2d 411 (1978).

In support of their argument, the Bards point to two Washington Supreme Court cases in which the court found that the failure to enforce exception to the public duty doctrine applied. In Bailey v. Town of Forks, a police officer allowed a driver "obviously impaired by intoxication" to drive away in his truck. 108 Wn.2d at 264–65. The driver then collided with a motorcycle, seriously injuring a motorcycle passenger. Id. at 263. The court concluded that the officer had a duty to enforce state statutes prohibiting and establishing criminal sanctions for driving while under the influence of alcohol and pointed to a specific statute requiring that a publicly intoxicated individual "shall be taken into protective custody by the police." Id. at 269, 269 n.1.

In Campbell v. City of Bellevue, a city electrical inspector knew of the danger created by a nonconforming underwater lighting system but "failed to comply with the City's ordinances (Bellevue Municipal Code ss 16.32.090 and .110) directing that he sever or disconnect the lighting system until it was brought into compliance with electrical code requirements." 85 Wn.2d 1, 13, 530 P.2d 234 (1975). Accordingly, the court found that the public duty doctrine did not protect the City from liability when the plaintiff's wife was electrocuted. Id. at 2, 13.

In both of these cases, a statute or regulation detailed a very specific corrective action that the government agent was obligated to perform. Here, however, the statute does not specify any particular action to be taken by the local health boards to enforce the state board of health's rules. Like McKassen and

<u>Forest</u>, the enforcement actions listed in RCW 43.70.190 and RCW 43.70.200 are discretionary, and there is nothing in the statute to indicate that the local health boards are obligated to choose among them as alternatives. Because the Bards have not shown that SHD had a mandatory duty to take a specific corrective action, the failure to enforce exception does not apply.

### B. Legislative Intent

The Bards also argue that the trial court erred in finding that the legislative intent exception to the public duty doctrine did not apply. The legislative intent exception applies "when the terms of a legislative enactment evidence an intent to identify and protect a particular and circumscribed class of persons." <u>Bailey</u>, 108 Wn.2d at 268. This intent will not be implied and must be clearly expressed in the provision. <u>Ravenscroft v. Wash. Water Power Co.</u>, 136 Wn.2d 911, 930, 969 P.2d 75 (1998). The requirement that the class be particular and circumscribed does not necessarily mean that the class must be small or narrow. <u>Yonker ex rel. Snudden v. Dep't of Soc. & Health Servs.</u>, 85 Wn. App. 71, 79, 930 P.2d 958 (1997). "'Particular' means 'involving, affecting, or belonging to a part rather than the whole of something: . . . not universal,'" while "'[c]ircumscribe' means 'to set limits or bounds to: . . . to define, mark off or demarcate carefully.'" <u>Id.</u> (quoting <u>Webster's Third New International Dictionary</u> 410 (3d ed.1976)).

RCW 43.20.050 authorizes the state board of health to "[a]dopt rules controlling public health related to environmental conditions including but not limited to heating, lighting, ventilation, sanitary facilities, and cleanliness in public facilities including but not limited to food service establishments, schools,

recreational facilities, and transient accommodations." RCW 43.20.050(2)(d). The statute states that these rules should be adopted "[i]n order to protect public health." RCW 43.20.050(2). By its terms, RCW 43.20.050 is intended to protect the health of users of public facilities, a category so broad as to be essentially universal. It does not evidence a legislative intent to identify and protect a particular and circumscribed class.

The Bards argue that this case is analogous to Halvorson v. Dahl, in which the Washington Supreme Court determined that, unlike most codes, the housing code was not merely enacted for purposes of public safety or for the general welfare. 89 Wn.2d 673, 677, 574 P.2d 1190 (1978). Because the housing code identified "'conditions and circumstances . . . dangerous and a menace to the health, safety, morals or welfare of the occupants of such buildings and of the public'" and stated that its purpose was to provide for effective enforcement of minimum standards, the court determined that the code was "enacted for the benefit of a specifically identified group of persons as well as, and in addition to, the general public." Id.

SHD contends that Taylor v. Stevens County is a closer fit. 111 Wn.2d 159, 759 P.2d 447 (1988). In Taylor, the plaintiffs contended that the State Building Code Act[1] indicated an intent to protect them individually, rather than the public as a whole. Id. at 164. The Act stated that its purpose was to provide building codes throughout the state and that it was designed "[t]o promote the health, safety and welfare of the occupants or users of buildings and structures and the general

---

[1] Chap. 19.27 RCW.

public." Id. The court acknowledged that the building code promoted the welfare of occupants but distinguished it from the housing code at issue in Halvorson, saying that the building code's "primary purpose is to require that minimum performance standards and requirements for building and construction materials be applied consistently throughout the state." Id. at 165. By contrast, the court stated that the housing code's purpose section "focuses on substandard housing that is unfit for human habitation," and the purpose of the housing code "is necessarily more focused on the public health and safety of occupants of substandard buildings." Id.

The Bards dismiss Taylor as "an economic damages-only case that involved building permitting under the building code, unrelated to protecting the health and safety of building occupants." Despite these factual differences, the provision at issue here is more analogous to the building code in Taylor than to the housing code in Halvorson. The express purpose of RCW 43.20.050 is to promote public health by requiring the state board of health to adopt health and safety regulations for public facilities. RCW 43.20.050(2)(d). Like the code at issue in Taylor, these health and safety regulations are designed to create minimum standards to be applied consistently for the health of the public, rather than to remedy a specific danger to the public like the hazardous living conditions referenced in Halvorson. The legislative intent exception to the public duty doctrine does not apply.

II.     Implied Cause of Action

The Bards also contend that RCW 43.20.050 gives rise to an implied cause of action. "Where appropriate, a cause of action may be implied from a statutory provision when the legislature creates a right or obligation without a corresponding remedy." Ducote v. Dep't of Soc. & Health Servs., 167 Wn.2d 697, 703, 222 P.3d 785 (2009). The Washington Supreme Court recently reaffirmed that Washington courts use the three-factor analysis adopted in Bennett v. Hardy, 113 Wn.2d 912, 920–21, 784 P.2d 1258 (1990), to determine whether a statute creates an implied cause of action: "[t]he factors are (1) whether the plaintiff is within the class for whose '"especial"' benefit the statute was enacted, (2) whether legislative intent supports creating or denying a remedy, and (3) whether implying a remedy is consistent with the underlying purpose of the legislation." Rocha v. King County, 195 Wn.2d 412, 424–25, 460 P.3d 624 (2020) (quoting Bennett, 113 Wn.2d at 920). The implied cause of action analysis is similar to that of the public duty doctrine in that it "focuses on determining whether a statute or regulations creates a duty that can be enforced by a lawsuit in tort." Ehrhart, 195 Wn.2d at 400 n.6.

A.  Protected Class

Courts look to the language of the statute to ascertain whether the plaintiff is a member of the protected class. Swank v. Valley Christian Sch., 188 Wn.2d 663, 576, 398 P.3d 1108 (2017). The Bards argue that "students, teachers, staff, and adults who volunteer in schools[] fall within the class of persons RCW 43.20.050 intends to protect." To support this argument, they point to the WAC provisions meant "to maintain minimum environmental health and safety standards

- 11 -

for school facilities" and specifying that "[t]he existence of unsafe conditions which present a potential hazard to occupants of the school are in violation of these regulations." WAC 246-366-005; WAC 246-366-140(1). However, RCW 43.20.050 itself does not specifically protect occupants of school buildings. As discussed above, the express purpose of the statute is "to protect public health." RCW 43.20.050(2). This factor does not support an implied cause of action under RCW 43.20.050.

B. Legislative Intent

When assessing whether the legislature intended to grant a right of recovery for statutory violations, courts "'"can assume that the legislature is aware of the doctrine of implied statutory causes of action,'" even where the statute is silent as to civil remedies." Beggs v. Dep't of Soc. & Health Servs., 171 Wn.2d 69, 78, 247 P.3d 421 (2011) (quoting Bennett, 113 Wn.2d at 919). This factor requires courts "to determine whether legislative intent supports implying the requested remedy, rather than any remedy." Rocha, 195 Wn.2d at 428.

The presence or absence of certain features in a statute informs the analysis of whether the legislature intended to create a right of recovery. A grant of immunity from civil liability to certain groups under a statute indicates that the legislature contemplated the possibility of civil liability and is evidence of the legislature's intent to imply a cause of action. Swank, 188 Wn.2d at 677–78. If a remedy for a violation of a statute already exists, it is unlikely that the legislative intent includes implying another cause of action. See Wright v. Lyft, Inc., 189 Wn.2d 718, 727, 406 P.3d 1149 (2017) ("CEMA's plain language demonstrates

the legislature's intent that the recipient of unsolicited text messages bring a CPA claim. This legislative intent does not support creating a remedy where one already exists."). The absence of an enforcement mechanism in a statute showing a "clear legislative concern" for a particular group weighs in favor of an implied cause of action. See Swank, 188 Wn.2d at 677 ("The legislative concern with youth athlete concussions is clear in the Lystedt law. . . . Despite this clear concern, there is no mechanism in the Lystedt law to enforce the requirements intended to address the risks of youth athlete concussions. Given the clear legislative concern, it is logical to infer that the legislature intended that there be some sort of enforcement mechanism."). The existence of an express enforcement mechanism for one subset of the protected class does not necessarily preclude an implied cause of action for another subset of the protected class. See Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 546, 374 P.3d 121 (2016) (finding that the express cause of action in the Abuse of Vulnerable Adults Act for vulnerable adults who have suffered abuse or neglect did not preclude also finding an implied cause of action against mandated reporters for failure to report because "[t]he express liability provision provides redress for actual abuse; it does not provide redress for those who breach their mandatory reporting duty").

SHD argues that the inclusion of the discretionary enforcement mechanisms in RCW 43.70.190 and RCW 43.70.200 indicates that the legislature did not intend to imply a cause of action against a health district for failure to enforce any regulations adopted under the authorization in RCW 43.20.050(2). The Bards argue that these statutes do not provide enforcement mechanisms to

be taken by members of the protected class and therefore do not preclude an implied cause of action. RCW 43.20.050 provides that "[a]ll local boards of health . . . shall enforce all rules adopted by the state board of health." RCW 43.20.050(5). It also provides that,

> In the event of failure or refusal on the part of any member of such boards or any other official or person mentioned in this section to so act, he or she shall be subject to a fine of not less than fifty dollars, upon first conviction, and not less than one hundred dollars upon second conviction.

RCW 43.20.050(5).

The discussion of this issue is hobbled by the conclusion above that there was no specific class protected by the statute. Because there is no specific protected class, the legislature cannot have intended to imply a cause of action for its members. However, even if the Bards are members of a protected class under the statute, they do not point to any clear legislative intent to provide them a remedy for a local health board's failure to enforce regulations. The statute also provides for other enforcement mechanisms and penalties for failure to enforce. This factor also weighs against implying a cause of action for members of the public.

### C. Purpose of the Legislation

The third Bennett factor "looks to the entire statutory scheme to determine whether the requested remedy is consistent." Rocha, 195 Wn.2d at 428. SHD argues:

> [A]llowing a cause of action against a local health district for its failure to enforce a regulation adopted by the Board of Health under RCW 43.20.050 would not be consistent with the purpose of the statute,

which is to promote public health, not to address a specific societal concern such as the prevention of concussions in youth sports (Swank), child abuse/neglect ([Tyner] v. Dep't of Soc. & Health Servs., 141 Wn.2d 68, 1 P.3d 1148 (2000) and [Beggs]), or age discrimination in employment (Bennett).

SHD is correct that the explicit purpose of the statute's grant of authority to the state board of health to adopt rules regarding environmental conditions in public facilities is "to protect public health." RCW 43.20.050(2)(5). Allowing a cause of action for failure to enforce rules promulgated under this authority, while consistent with this basic purpose, does not appear to be warranted by such a general statement. This factor weighs against implying a cause of action.

Because all three factors weigh against it, RCW 43.20.050 does not imply a cause of action against local health districts for failure to enforce rules and regulations created under its authority. The trial court did not err in granting summary judgment for SHD.

Affirmed.

WE CONCUR: