[No. 32. Decided March 8, 1890.]

THE OREGON RAILWAY AND NAVIGATION COMPANY V.
JOHN P. SMALLEY.

CONSTITUTIONAL LAW — DUE PROCESS OF LAW — RAILROADS —
KILLING STOCK — FENCES.

The act approved November 28th, 1883 (Laws Wash. T., 1883, p. 51), making railroad companies liable for stock killed by them where their tracts are not fenced, regardless of any questions of negligence on the part of the railroad company, or of contributory negligence on the part of the plaintiff, is void, because it imposes a penalty where no duty to fence is imposed, and would be a taking of property without due process of law.

Sections 1 and 8 of the above-mentioned act are interdependent with §§ 2 to 7 of the same act (heretofore declared unconstitutional), and must fall with them; and the case of *Dacres v. O. R. & N. Co.,* holding that §§ 1 and 8 are capable of being executed in accordance with the apparent legislative intent, wholly independent of §§ 2 to 7, is overruled. (SCOTT and DUNBAR, JJ., dissent).

*Appeal from District Court, Walla Walla County.*

The facts sufficiently appear in the opinion.

*W. W. Cotton,* for appellant.

The act relating to fencing of railroad tracks, approved November 28, 1883, is unconstitutional. If the purpose of a statute is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portions. Cooley on Const. Lim. 178-9; *Warren et al. v. Mayor, etc.,* 2 Gray, 84; *Fisher v. McGirr et al.,* 1 Gray, 1; *Taylor v. Commissioners, etc.,* 23 Ohio St. 22, 84; *State ex rel. Walsh & Walsh v. Dousman,* 28 Wis. 541-547; *Campau v. City of Detroit,* 14 Mich. 276, 283, 45; *Commonwealth v. Potts,* 79 Pa. St. 164. The act cannot be justified as a police regulation, since it effects no purpose and regulates no evil, in fact, does nothing other than to compel railroad companies to pay for cattle killed

by reason of no neglect or omission of such companies. Such an act is unconstitutional. *Bielenberg v. Montana, etc., Ry. Co.*, 8 Mont. 271; *Cairo R. R. Co. v. Parks*, 32 Ark. 131; *Zeigler v. South, etc., R. R. Co.*, 58 Ala. 595; *Ohio, etc. R. R. Co. v. Lackey*, 78 Ill. 55.

It has been repeatedly held that where cattle come upon a railroad track at a point where the railroad company is not bound to fence, the company is not liable for the injury to them wherever it occurs. *Morrison v. R. R. Co.*, 32 Barb. 568; *Jefferson, etc., R. R. Co. v. Brevoort*, 30 Ind. 324; *Wabash, etc., R. R. Co. v. Tretts*, 96 Ind. 450; *Louisville, etc., R. R. Co. v. Hall*, 93 Ind. 215; *Bremmer v. Green Bay, etc., R. R. Co.*, 61 Wis. 114 (S. C. 19 Am. & Eng. R. R. Cas. 575).

No fencing acts have been construed by any of the courts as making railroad companies absolutely liable, irrespective of the question as to what the acts or defaults of the owner of cattle may have been in allowing them to stray upon the track. Many cases have held that contributory negligence on the part of the owner would prevent a recovery. *Kansas City, etc., R. R. Co. v. McHenry* (Kan.), 6 Am. and Eng. R. R. Cas. 581; *Van Horn v. Burlington, etc., R. R. Co.* (Iowa), 7 Am. & Eng. R. R. Cas. 591; *Richards v. Chicago, etc., R. R. Co.* (Wis.), 13 Am. & Eng. R. R. Cas. 624; *Hines v. S. F. & N. P. R. R. Co.* (Cal.), 20 Am. and Eng. R. R. Cas. 486.

The opinion of the court was delivered by

STILES, J. — This was an action against a railroad company for the value of a colt killed by a train of the company, and for injuries to another colt by the same train.

The complaint alleged facts which, if proven, would have been sufficient to warrant a recovery at common law, and the answer put in issue all its material allegations. At the trial, however, both the plaintiff and the court appear to have regarded it as a case prosecuted under the act of November 28, 1883. Accordingly, the testimony of the

plaintiff was limited to the facts of ownership, the killing and maiming, the want of a fence along the track, and the value and damage. The defendant offered to show that its train was managed without fault, and that the plaintiff's negligence contributed to the accident; but the court rejected the evidence as being irrelevant and immaterial, and this ruling was excepted to.

It did appear, however, that the animals had strayed into a fenced field, not the property of their owner, and that from that field, which extended to the railroad track, they had gone upon the track at the point where they were struck by the train.

The defendant requested a number of instructions to the jury which would have been applicable in the absence of any statute; but the court refused to give them, and did give the following: "Railroad companies owning or operating lines of railway within this territory are liable for the value of all live stock killed or maimed by their passing trains, where their roads are not fenced."

Exceptions were taken to the refusal to give the instructions asked, and to the giving of the instruction noted above. Error is assigned upon all the exceptions.

This case brings this court squarely to a review of the act of 1883, commonly known as the "fence law," and of the case of *Dacres v. Oregon Railway & Navigation Company*, 20 Pac. Rep. 601, decided by the supreme court of Washington Territory, January 29, 1889. The court in that case, and the parties there and here, decided and admitted that §§ 2, 3, 4, 5, 6 and 7 of the act were unconstitutional, because they deny the right of trial by jury; but in response to its own question, "Is the whole act void by reason of the unconstitutionality of the sections named?" the court answered in the negative, and upheld the first and eighth sections as valid and binding law, "being complete in itself and capable of being executed in accordance with the apparent legislative intent,

wholly independent of that which was rejected," as the
court said. The ruling was based upon the general prin-
ciple, as stated by Judge Cooley's *Constitutional Limita-
tions* (5th ed.), 212, thus: " Where, therefore, a part of a
statute is unconstitutional, that fact does not authorize
courts to declare the remainder void also, unless all the
provisions are connected in subject-matter, depending on
each other, operating together for the same purpose, or
otherwise so connected together in meaning, that it cannot
be presumed the legislature would have passed the one
without the other. . . . If, when the unconstitutional
portion is stricken out, that which remains is complete in
itself, and capable of being executed in accordance with
the legislative intent, wholly independent of that which
was rejected, it must be sustained."

The act in question, as it is left, including its title, is
as follows:

" An act to secure to the owners of live stock payment
of the full value of all animals killed or maimed by railroad
trains. Be it enacted," etc.

" Section 1. That all railroad companies owning or op-
erating lines of railway within the Territory of Washington
shall be liable to the owners of all live stock for the full
value of all such live stock killed or maimed by their pass-
ing trains."

" Sec. 8. No railroad company shall be liable for stock
killed upon their roads, when the same is fenced by such
company with a good and lawful fence."

Construing the act, the court held that its general object
was to enlarge and extend the rights of owners of live stock
as against railroad companies, so long as the railways are
not properly fenced, and its final construction of the two
sections retained was as follows:

" Where an animal, being lawfully upon adjoining land,
thence escapes upon a railway track at a place which is not
fenced, but which the company may properly and lawfully
fence, and the animal is killed by a passing train, the com-
pany is liable for the value of the animal, if killed; and if

14—1 WASH.

injured, but not killed, for the amount of damages caused by the injury. . . . It is evident, upon the face of this statute, that the legislature intended to make the neglect or failure of railway companies to fence their railways evidence of negligence. This is made clear by ¿ 8, which exempts companies from liability for the killing of live stock where the railways are properly fenced."

Viewing this act in the light of its title alone, we should be inclined to agree with that court as to the general object sought by the legislature. But that, by its terms, it was a reasonable statute, or one such as has been commended by courts in the cases cited, or that its provisions could be toned down and softened by the construction put upon them, so as to make it a reasonable statute, we are unable to discover, even after a careful study of the decision quoted.

The liability of a railroad company for injuries to live stock is based upon a supposed negligence in the performance of some duty imposed under the general rules of law or a statute; but to fence its track is not the duty of a railroad company under any law of Washington, either written or unwritten, not excepting the act in question. Therefore, without this statute the usual rules as to negligence and the burden of proof would apply in these stock-killing cases; and the plaintiff would be answerable for contributory negligence. By this act, however, without imposing upon a railroad company the duty of fencing at any place where a fence would be reasonable, a conclusive presumption of negligence on its part is enacted, and its absolute liability fixed without regard to the possible contributory negligence of the owner. Nor is any distinction made in cases where no lawful fence could be erected, as at street or highway crossings, or in towns; so that were a case presented where the owners of animals, hitched to a vehicle, with gross negligence drove them along a highway in front of a passing train, and both owner and animals were injured, while the owner could recover nothing for his own

injury, he could have the value of his live stock from the owner or operator of the train.

Liability of this kind is to be imposed upon him who is found at fault, and the injured party not being himself in the wrong; but here is a statute which imposes a penalty for no fault, which is a taking of property without due process of law, which is forbidden by the constitution. Now are we able to see in § 8 anything to relieve § 1 of these objections. Under it railroad companies may fence or not as they please; but if they do fence they may escape every reasonable liability, to the great wrong of owners of stock, through whose herds accidentally strayed upon their tracks, their engineers may wantonly drive locomotives, killing and maiming helpless beasts without fear of consequences.

A late and well-considered case upon this subject, growing out of a statute similar to § 1, is that of *Bielenberg v. Montana Union Ry. Co.*, 8 Mont. 271 (20 Pac. Rep. 314). In many states there are statutes which make it the duty of railroad companies to fence their tracks at reasonable places, and when animals are killed where there ought to have been a fence, but where none had been erected, the absence of the fence is made conclusive presumption of negligence in some cases, and of liability in others; and these statutes have been upheld. But until the duty of fencing is imposed, no such penalty can be attached to an omission to fence.

Again, it will be noted that in Judge Cooley's rule as to holding part of an act constitutional, although another part be held unconstitutional, it is laid down as requisite that the part upheld must be "capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected." And the court, in *Dacres v. Oregon R. &. N. Co.*, held § 1 to meet the requirement. But let us examine. It is true it would be a very simple thing for courts to enforce the provisions of §§ 1 and 8 if they had been enacted alone. But leaving out all

question of the right of trial by jury, upon which the
court in the former case held §§ 2 to 7 to be unconstitu-
tional, and suppose there were no such possible objection,
what is it that the legislature intended and provided that
the owner might recover; and when can the action be com-
menced ?   By § 4, notice of the killing must be given to
the superintendent, local business manager or agent of
the railroad company, by the owner; the notice must be
in writing and contain the date and place of the killing,
with the number and kind of the animals; and by § 3, ten
days were allowed the company to appoint an appraiser.
Both parties were bound by the appraisement, and no suit
could be brought until at least ten days after the notice of
the killing given in writing to the defendant, through
some one of its responsible agents.   Presumably the ap-
praisers chosen would have been more or less experts in
valuing stock, and their judgment more satisfactory than
the verdict of a jury.   Who can say with certainty that
the legislature did not intend, in view of the severe rule
adopted against the railroad companies as to their liability,
that they should, before being put to the cost of a suit,
have the time and notice required as substantial rights;
and that both parties should have the advantage of expert
opinion as to the value directly employed in fixing the
amount to be paid, rather than as mere evidence before a
jury ?   These advantages are totally lost with the obnox-
ious sections out, but we regard them as having been
materially within the legislative intent in enacting the law.
And further, although § 1 provides that companies shall be
liable for "the full value," it seems clear to us that to as-
certain for what they are, after all, really liable, § 1 must
be read with § 5, where the provision is, that after the ap-
praisement, "the amount of such assessment shall thereupon
become due and payable, with interest from date of said
assessment, at the rate of one per cent. per month, and such
amount, together with interest and costs, including attor-

ney's fees now allowed as costs in the district court, *may be recovered by suit* in any court having jurisdiction thereof." That is, the suit of the owner, instead of being in trespass for the injury to his chattel, would be in assumpsit upon the award of the appraisers; the actual value of the chattel would be immaterial, and need not be pleaded or proved; and the very fact of the killing need be pleaded only as a matter of inducement for the award sued on. Was it the intention of the legislature that, instead of the cause of action provided for in § 5, companies should be compelled to respond to, or owners should be required to plead, some entirely different cause of action; or that both should produce their proofs as to value in a different form from that provided in the act? On the contrary, it seems to us that the clear intention of the legislature was to give to both parties all the privileges above mentioned, as a substantive part of the right in the one and the liability in the other; and that, therefore, § 1 is not " capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected," and must fall with the other unconstitutional sections.

We sustained §§ 1 and 8 in the case of *Oregon Ry. & Nav. Co. v. Dacres, ante,* p. 195, decided at this term, but solely upon the ground that the decision of the court in the same case in 1889 constituted the law of the case upon the new trial.

The judgment of the court below is reversed, and a new trial granted.

ANDERS, C. J., and HOYT, J., concur.
SCOTT and DUNBAR, JJ., dissent.