MANLEY WHIPPLE, as Administrator of the Estate of DANIEL M. WHIPPLE, Deceased, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 31468.)

Fourth Department, October 28, 1953.

*Nathaniel L. Goldstein, Attorney-General* (*John R. Davison* and *Wendell P. Brown* of counsel), for appellant.

*Mark Heath* for respondent.

WHEELER, J.  On this appeal we are to review an award made for the death of claimant's two-year-old son, who was drowned in a drainage ditch which parallels State highway No. 18 on the south side thereof.

The child resided with his parents in a building used as a combination filling station, garage and home, situate on the south side of the highway.  Along and within the State's right of way there is an open ditch with moderately sloping banks some 10 to 12 feet deep which extends for a distance of about 400 feet westerly from the Whipple property, and in which the water flows easterly into an eighteen-inch tile pipe.  This tile pipe carries the water underground between the Whipple prop-

erty and the highway for a distance of 225 feet. The area above the pipe has been filled in for a driveway leading to the service station. From the outlet or easterly end of the pipe the water discharges into an open ditch, which descends easterly 25 or 30 feet until it joins a creek.

The incident with which we are concerned occurred in April during the spring freshets; the water was flowing rapidly through the ditch at a depth of about two feet, causing a whirlpool where the water was being sucked into the intake of the pipe. On the day in question the child's mother left him momentarily on the back step of the home. When last seen he was bounding a ball to the west of the house. Some five to seven minutes later his body was found about eight or ten feet from the east, or outlet end of the pipe, where the water was approximately three to four feet deep.

The claim was pleaded and tried on the theory that the boy "fell" into the ditch on the west side of the Whipple property and was carried into and through the tile pipe by force of the water pressure and suction. While it is a matter of conjecture whether the child wandered down one of the banks of the ditch and either waded or fell into the stream, there seems to be some proof of facts from which an inference might be drawn that he was swept through the tile pipe as claimed.

Claimant's specification of negligence is that a dangerous condition existed because of the failure and neglect of the State " to provide guard rails or sufficient barriers around said embankment and ditch and in failing to provide a grille over said drainage tile ". The Court of Claims has found that inasmuch as there was no barricade or guardrail on either side that it was immaterial whether the child fell into the westerly or the easterly ditch; and, further, that the State " had notice of this backing up of this water and the concrete was in the outlet side of this pipe."

We find no evidence to support the conclusion that the water was backing up in either the ditch or the pipe or that the State had notice of any such condition. On the contrary, the evidence clearly indicates that the water was flowing freely through the pipe and in both ditches, notwithstanding the conflicting evidence of a certain amount of concrete in the outlet section of the pipe.

There is evidence that the foreman of a State maintenance crew at one time prior to this incident had suggested that a grille should be placed over the intake opening of the tile to

keep any large object from clogging up the tile or going through it. However, there is nothing in this record which suggests the necessity for such unusual precaution, or that such a grille would have been practicable so as to permit the drain to properly function. (*Johnson* v. *City of New York*, 208 N. Y. 77.) It seems to us that such a proposed barrier would tend to defeat the purpose of the drain, which was to permit the water to flow freely and without hindrance through the tile. Moreover, there appears to be no basis for the further inference that the child would not have drowned had there been such a guard over the intake.

Unquestionably, the State, although not an insurer, is burdened with the affirmative duty of furnishing reasonable protection for a traveler generally on its highways, and this includes the duty to erect guardrails or barriers along its highways where they are necessary to make the same safe for travel in the use of ordinary care. (See *Garrow* v. *State of New York*, 268 App. Div. 534 and cases cited therein, affd. 294 N. Y. 741.) Obviously, such a rule is clearly inapplicable here in the absence of proof that the infant was using the highway prior to his death. Although there may be some substance to claimant's argument that guardrails should have been erected on the edges of the driveway immediately over the tile pipe, there is no proof, or even any inference, that the child entered the ditch from either of those particular points.

To sustain the award made in this case we must hold as a matter of law that there was a duty upon the State to erect barriers on both sides of the drainage ditch reasonably sufficient to prevent a *non sui juris* infant from entering or falling into the ditch, regardless from whatever direction his approach thereto is made. We decline to subscribe to such a theory. It would be imposing a burden beyond all precedent to require the State to so fence its drainage ditches located, as here, in rural or sparsely settled localities. Furthermore, there is nothing in the record which indicates any reasonable necessity for such extraordinary precautions. There is no suggestion that this child had previously played or that any other children had played or congregated in the vicinity of this ditch; thus, it follows that the cases relating to the creation of a dangerous attraction in or in close proximity to a highway do not apply. (See *Leblanc* v. *State of New York*, 271 App. Div. 861, and *Tierney* v. *New York Dugan Bros.*, 288 N. Y. 16.)

Giving the claimant the benefit of every inference which can logically be drawn in his favor, we feel that this tragedy could

not have been reasonably foreseen and that there was no breach of duty on the part of the State which was the proximate cause of the child's death.

It follows that the judgment should be reversed and the claim dismissed.

All concur. Present—McCurn, P. J., Vaughan, Kimball, Piper and Wheeler, JJ.

Judgment reversed on the law and facts without costs of this appeal to either party and claim dismissed. Certain findings of fact disapproved and reversed and new findings made.