[No. 38930. En Banc. August 17, 1967.]

JARRELL R. MORGAN et al., *Appellants*, v. THE STATE OF WASHINGTON et al., *Respondents*.*

*J. Kelley Arnold* (of *McCormick, Hoffman & Rees*), for appellants.

*The Attorney General* and *Robert E. Lundgaard, Assistant*, for respondent State of Washington.

ROSELLINI, J.—This is a wrongful death action, brought by the parents of a 2-year-old child who was killed when he was struck by an automobile on Interstate Highway 5, a controlled access highway. It passes adjacent to the town of Tillicum. The child, whose mother was visiting a resident of Tillicum, had wandered away from the residence, across a county road, thence 100 feet through private property to a railroad right-of-way, across the railroad right-of-way which was 100 feet wide, and 75 feet across the highway right-of-way to the median. At that point, the child stepped off the median in the direction from which he had come and was struck by an automobile.

Upon reaching the highway right-of-way, the child had passed through or under a 4-strand barbed wire fence, which, according to the allegations of the complaint, was broken.

*Reported in 430 P.2d 947.

The theory of this action is that the state owes a duty to small children to prevent their wandering onto public highways. The trial court granted the defendant's motion for summary judgment.

Under RCW 4.92.090 the defendant has waived its sovereign immunity and made itself liable for its tortious conduct to the same extent as a private individual. The plaintiffs cite no case in which it has been held that the owner of a highway or road has a duty to fence it in order to protect persons, whether children or adults, who might wander upon it.

The plaintiffs cite RCW 47.52.027 and urge that their cause of action finds support in this statute. The statute provides that the highway commission may adopt such regulations relating to control of access to highways of this type as it deems advisable to properly control access thereto, to preserve the traffic-carrying capacity of such highways, and to provide the maximum degree of safety to users thereof. It provides that the standards and rules so adopted shall have the force and effect of law.

The plaintiffs quote from a publication, entitled "A Policy of Fencing Controlled Access Highways," published by the American Association of State Highways Officials in 1959, which states:

> Controlled access highway operation wherein drivers move at high speeds with expectation of complete protection from all forms of roadside interference makes fencing a more definite responsibility of the highway agency. . . . Fencing should be provided wherever there is potential hazard through encroachment. To the extent that a fence is needed and an appropriate type is not provided and maintained by the abutting landowner, the highway agency may have to erect and maintain it.

The defendant admits that it is its responsibility to make the highway safe for users,[1] but disavows any duty to persons who are not upon the highway for some lawful purpose. The plaintiffs contend, however, that this material quoted from the American Association of State Highway

---

[1]See *Kelly v. Gifford*, 63 Wn.2d 221, 386 P.2d 415 (1963).

Officials' 1959 publication, is a part of the law of this state and imposes a duty upon the highway agency to keep children off the highway.

██ The record does not show that this particular statement of policy has been adopted by the State Highway Commission, and the plaintiffs do not direct us to any public record which shows that it has been adopted. In any event, it is clear from the language of the statute and the policy statement that both are intended for the protection of users of the highway, and were not intended to render the state liable to persons who might go onto the highway in violation of the access regulations. Only persons in the class for whose protection a statute was enacted can claim its benefits. See *Raffensperger v. Towne*, 59 Wn.2d 731, 370 P.2d 593 (1962).[2]

The plaintiffs also urge that the common law imposes a duty to guard against the type of accident which claimed the life of their child.

██ The plaintiffs cite *Sherman v. Seattle*, 57 Wn.2d 233, 356 P.2d 316 (1960), as precedent for their action. In that case, a 3-year-old child was injured when a lift, owned and operated by the defendant city, ran over his arm and crushed it. The boy lived on the defendant's premises at the Diablo dam site in a community owned by the defendant. The lift was used to transport passengers and freight up and down a 550-foot hill between the "town" and the dam site. The bottom terminus of the lift was immediately adjacent to a public thoroughfare. The community commissary, post office, storage locker, and a waiting station for the bus were located within 100 feet of the terminus, and the community school playground was less than 200 feet away.

Although children frequented the area around the terminus, it was not fenced. Also, the lift was not equipped with a braking system to stop it in case of emergency, and it contained no device that could be used by passengers to

---

[2]See also *Hay v. Hill*, 137 Conn. 285, 76 A.2d 924 (1950); *Brown v. Inhabitants of Skowhegan*, 82 Me. 273, 19 Atl. 399 (1890); 40 C.J.S. *Highways* § 265.

warn the operator of dangers apparent to passengers which the operator, who was at the top terminus, could not see. A few minutes prior to the accident, the child was seen on the tracks by several persons who tried to signal the operator; but, although he saw these people, the operator said he did not see the signals.

This court held that the lift was not an attractive nuisance but that the defendant was liable for its failure to use reasonable care to avoid injuring children, who were likely to be present around the bottom terminus. Not only did the defendant not take reasonable precautionary measures in equipping the lift with safety devices and fencing the terminus, but it also created the conditions which made it likely that children would be in the area — that is, it made the area around the terminus a center of activity for the community.

The holding of that case is in accord with the rule which is found in 65 C.J.S. *Negligence* § 63(66) (1966). It is there stated:

[I]t has been broadly held that where the presence of children is known or may be anticipated, one who maintains something dangerous to them and so exposed that there is a likelihood of their coming in contact with, and being injured by, it is under a duty of anticipating injury to such children and taking precautions to avoid it, notwithstanding they may be trespassers; and the owner or operator of a dangerous instrumentality on premises may be liable for injury resulting therefrom to a trespassing child. This rule applies even though the particular thing in question is not attractive to children or does not come within the attractive nuisance doctrine, or the attractive nuisance doctrine is not recognized in the particular jurisdiction; the real basis of liability is the foreseeability of harm to children rather than any element of attraction of children.

On page 793 of this volume of the encyclopedia, it is said:

It is only when the owner knows, or is chargeable with knowledge, of the likelihood that children will trespass on his property that he is under a duty to exercise due care not to injure them.

This case differs from *Sherman v. Seattle, supra,* in at least two important respects. The first and foremost is that it is not alleged or shown by affidavit, or asserted that children are likely to or do play in and around the controlled access highway at the point where the accident occurred. Indeed, there is no assertion that children frequent or play in and about such facilities at all. Second, in that case, the defendant owned and operated the instrumentality which inflicted the injury, and failed to equip it with safety devices which could have prevented the accident. Furthermore, there was evidence of negligence on the part of the operator of the lift, who could have stopped it had he perceived the warnings which were being shouted and signalled to him by several persons. In this case, the defendant had no such control over the instrumentality which inflicted the injury.

While the writer of the opinion did not discuss the question, it does not appear that the cost of installing safety devices or fencing the terminal would have been excessive.

The plaintiffs concede that they have been unable to discover any case in which a court has recognized a duty on the part of a private person or public body to fence a road or highway. Our research has been equally fruitless. The defendant has found one case wherein a state was sued for failure to fence a drainage ditch, beside a highway, in which the plaintiff's child had drowned. In *Whipple v. State,* 282 App. Div. 557, 560, 125 N.Y.S.2d 52 (1953), the court held that there was no such duty, saying:

> Unquestionably, the State, although not an insurer, is burdened with the affirmative duty of furnishing reasonable protection for a traveler generally on its highways, and this includes the duty to erect guardrails or barriers along its highways where they are necessary to make the same safe for travel in the use of ordinary care. (See *Garrow v. State of New York,* 268 App. Div. 534 and cases cited therein, affd. 294 N. Y. 741.) Obviously, such a rule is clearly inapplicable here in the absence of proof that the infant was using the highway prior to his death.

In the same case the court further expressed the following opinion:

To sustain the award made in this case we must hold as a matter of law that there was a duty upon the State to erect barriers on both sides of the drainage ditch reasonably sufficient to prevent a *non sui juris* infant from entering or falling into the ditch, regardless from whatever direction his approach thereto is made. We decline to subscribe to such a theory. It would be imposing a burden beyond all precedent to require the State to so fence its drainage ditches located, as here, in rural or sparsely settled localities.

The plaintiffs point to the fact that controlled access highways are of recent origin to account for the lack of authorities supporting their contention. However, roads have been employed by man since he first began to travel regularly between points. If children are at all prone to play in or about controlled access highways, they are much more attracted to roads and streets as areas in which to play. If owners of roads are to be held liable for harm to children resulting from a failure to fence such roads, it would seem logical to suppose that there would be some precedent to be found in the cases. Of course, the doctrine of sovereign immunity would have protected public bodies in most jurisdictions; but there have always been privately owned streets and ways, and it seems likely that an accident in one of them would have resulted in a lawsuit at some time, had it been thought that the owner had a duty to fence it.

The law pertaining to the liabilities of railroads bears some analogy. However, it should be noted that the owner of the right-of-way and tracks customarily owns as well the active instrumentality, the locomotive, which inflicts the injury. Nevertheless, there was no common law duty to fence the railroad right-of-way. *Oregon Ry. & Nav. Co. v. Smalley*, 1 Wash. 206, 23 Pac. 1008 (1890); *Jolliffe v. Brown*, 14 Wash. 155, 44 Pac. 149 (1896). Duties of the railroads in this regard are imposed by statute. See annotation, 16 A.L.R. 944.

Were this court to lay down a rule that the state must fence its controlled access highways where there is a possibility that children may wander upon them, it could not

logically refuse to extend that duty to the county to fence its roads, and to the municipality to fence its streets. For it is apparent that there is a greater foreseeability of harm to children in these less-traveled ways than on freeways. We can take judicial notice of the fact that city children play in the streets more than country children play in the roads and certainly much more than any children play on limited access highways. And yet the fencing of city streets would result in the greatest expense to the governmental unit which often claims to have the least adequate sources of revenue and would result in great inconvenience to property owners, whose access to the streets would have to be seriously curtailed in order to render the fencing effective in keeping small children off the streets. Such considerations as these make it obvious that this court should not take it upon itself to impose a liability unprecedented in the common law, particularly when the accident which occurred is not claimed to be of a kind which commonly occurs, or is likely to occur, under similar circumstances.

We hold that, in the absence of a statute creating the burden, the state has no duty to fence its controlled access highways for the protection of children.

The judgment is affirmed.

All Concur.