**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 2, 2020

*Stephec, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 2, 2020

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| SANDRA EHRHART, individually and as personal representative of the Estate of Brian Ehrhart,<br><br>Respondent,<br><br>v.<br><br>KING COUNTY, operating through its health department, Public Health–Seattle & King County,<br><br>Petitioner,<br><br>and<br><br>SWEDISH HEALTH SERVICES, a non-profit entity, and JUSTIN WARREN REIF, an individual,<br><br>Defendants. | NO. 96464-5<br><br>EN BANC<br><br>Filed: APRIL 2, 2020 |

STEPHENS, C.J.—This case concerns the tragic death of Brian Ehrhart, who

died within days of contracting hantavirus near his Issaquah home in early 2017.

His widow, Sandra Ehrhart, sued King County's public health department, Swedish

Medical Center, and an emergency room physician, arguing all three had negligently caused Brian's death.[1] King County asserted the public duty doctrine as an affirmative defense, arguing it was not liable for Brian's death because it did not owe him any duty as an individual. Ehrhart moved for partial summary judgment asking the court to dismiss this defense and others. The trial court granted Ehrhart's motion but conditioned its ruling on the jury finding particular facts. King County appealed, and we accepted direct discretionary review.

This interlocutory appeal asks us to resolve two questions: one procedural and one substantive. The procedural question is whether the trial court could properly grant summary judgment conditioned on the jury finding particular facts. We hold it could not because summary judgment is appropriate only when there are no genuine issues of material fact.

The substantive question—a question at the heart of the public duty doctrine—is whether the regulations governing King County's responsibility to issue health advisories create a duty owed to Brian individually as opposed to a nonactionable duty owed to the public as a whole. We conclude King County does not owe an individualized duty to Brian and no exception to the public duty doctrine

---

[1] Because Brian and Sandra Ehrhart share a surname, for clarity we refer to Brian by his first name and to the plaintiff Sandra Ehrhart by her surname.

applies. Accordingly, we reverse the trial court's ruling and remand for entry of summary judgment in King County's favor on its public duty doctrine defense.

FACTS

Hantavirus is a rare and serious infection transmitted by deer mice through their droppings. It initially presents with flu-like symptoms such as fever and chills but can quickly progress to life-threatening respiratory complications. Infected patients may require intensive care, including intubation and oxygen therapy in cases of severe pulmonary distress. There were more than 40 reported cases of hantavirus in Washington in 2016, including 1 in King County.

In November 2016, a woman living near Issaquah contracted hantavirus. She went to the urgent care facility at Group Health Cooperative, where she was treated for nausea and discharged. She returned to Group Health the next day after her condition deteriorated and was then admitted as a patient at Overlake Medical Center. She spent several days in a coma, but she survived.

Overlake notified King County of that patient's case in December 2016 and King County promptly assigned a public health nurse to conduct an investigation, which included a review of the patient's medical records, interviews with her and her husband regarding exposure and recent travel, and consultation with her physicians. This investigation indicated that the patient had likely contracted

hantavirus on her own property. Because the patient had not traveled out of the area and the likely source of hantavirus exposure was confined to her rural land outside Issaquah, King County determined there were no other likely exposures and so a health advisory was not warranted. Over the course of this investigation, the patient's husband repeatedly shared with King County his concerns that a potential cluster of hantavirus in the area could lead to more exposures.

In February 2017, Brian—who also lived near Issaquah—came to the emergency room of Swedish Medical Center with fever, chills, vomiting, and a persistent cough. The emergency room physician discharged Brian with instructions to return if his symptoms worsened or if he had any additional concerns. The next day, Brian was rushed to the emergency room at Overlake—several of his organs were already failing. Brian died shortly thereafter.

PROCEDURAL HISTORY

In June 2018, Sandra Ehrhart filed suit on behalf of herself and Brian's estate against King County, the emergency room physician, and Swedish Medical Center, alleging their negligence caused Brian's death. Ehrhart argues WAC 246-101-505, which requires King County to "[r]eview and determine appropriate action" whenever it receives reports of certain serious conditions, created a duty that King County breached by failing to issue a health advisory after it learned of the

November 2016 case. King County asserted the public duty doctrine among other affirmative defenses in its amended answer.

Ehrhart moved for partial summary judgment, asking the court to strike several of King County's defenses, arguing, among other things, that the "failure to enforce" and "rescue doctrine" exceptions to the public duty doctrine applied. King County moved for a continuance under CR 56(f) and CR 6(b), asking for time to undertake discovery and file a cross motion for summary judgment on the public duty doctrine, and arguing that the court should consider the motions together to promote judicial economy. The court granted King County's motion in part, renoting Ehrhart's motion for partial summary judgment. King County also filed its cross motion for summary judgment on the public duty doctrine. But the trial court did not consider King County's cross motion for summary judgment alongside Ehrhart's motion for summary judgment during oral argument on September 28, 2018.

After that argument, the court ruled from the bench before issuing a brief written order. The court began by saying it "ha[d] this sense of for[e]boding" because "[t]he public duty doctrine ha[d] frustrated [the court] for years." Verbatim Transcript of Proceedings (Sept. 28, 2018) (VTP) at 19. The court briefly described Washington's waiver of sovereign immunity and the emergence of the discretionary

immunity doctrine, and stated, "The public duty doctrine was essentially adopted without any analysis . . . . And ever since then, there has been nothing but inconsistency in the case law." *Id.* at 20. The court explained, "There's never really been a good case where the Supreme Court or any other court of appeals has shown us how to meld the original discretionary immunity analysis with the public duty doctrine." *Id.* The court tried to "meld" the doctrines itself, walking through the analysis of discretionary immunity "for comparison purposes" and concluding the discretionary immunity doctrine would not apply because King County "was merely effectuating policy that had already been determined."[2] *Id.* at 20-21.

The court then briefly analyzed WAC 246-101-505 and concluded it contained both a "mandatory" provision and a provision that provided for the exercise of limited discretion.[3] *Id.* at 21-22. The court determined King County had discretion, but only to act "appropriate[ly]." *Id.* at 22. Because the court did not "know what is appropriate" in the circumstances, it decided that question "necessarily requires some kind of a factual analysis." *Id.* Despite recognizing that "[d]uty is always supposed to be a legal issue," the court decided to treat "duty as

---

[2] King County originally asserted the discretionary immunity doctrine as an affirmative defense but later withdrew it. *See* Clerk's Papers (CP) at 20, 32; VTP at 20 (noting "the County has withdrawn its discretionary immunity defense").

[3] "Local health officers or the local health department shall: (a) review and determine appropriate action for: (i) each reported case or suspected case of a notifiable condition." WAC 246-101-505(1).

-6-

being partially legal and partially factual." *Id.* So the court ruled "that there is a mandatory duty" for King County to "review and determine" appropriate action, but that "the jury needs to decide whether what the County did was or was not appropriate." *Id.* The court granted partial summary judgment for Ehrhart on the failure to enforce exception, "conditioned on a finding by the jury that [King] County's action was not appropriate."[4] *Id.* at 23.

King County moved for direct discretionary review by this court, which we granted.

ANALYSIS

This case requires us to once again examine the public duty doctrine, the development of which spans decades and intersects with distinct but related doctrines concerning governmental liability. Given the sometimes wandering path of the doctrine, we appreciate the trial court's efforts to struggle with the case law. We ultimately conclude, however, that the doctrine clearly applies in this case and precludes Ehrhart's claims against King County.

---

[4] Ehrhart did not seek review of the trial court's denial of partial summary judgment on the rescue doctrine exception, VTP at 24, and Ehrhart stipulated below that the other two exceptions to the public duty doctrine do not apply, CP at 706-07.

I.  The Public Duty Doctrine Bars Liability by King County Arising from Its Response to the Hantavirus Report

Ehrhart claims King County negligently handled the December 2016 report of a nonlethal hantavirus case and is therefore liable in tort. To prevail on a negligence claim, a plaintiff "'must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury.'" *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 429, 378 P.3d 162 (2016) (quoting *Crowe v. Gaston,* 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)). The question of duty is dispositive—"No defendant is liable for negligence unless he is under a legal duty to use care." DAN B. DOBBS, PAUL T. HAYDEN & ELLEN M. BUBLICK, THE LAW OF TORTS § 251, at 1 (2d ed. 2011) (footnote omitted). "Whether the defendant is a governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general." *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988) (citing *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 304, 669 P.2d 468 (1983), *overruled on other grounds by Meaney v. Dodd*, 111 Wn.2d 174, 759 P.2d 455 (1988)).

Ehrhart argues WAC 246-101-505, which requires King County to "[r]eview and determine appropriate action" whenever it receives reports of certain serious conditions, creates a duty that King County breached by failing to issue a health advisory after it knew of the November 2016 hantavirus case. In response, King

County claims the public duty doctrine bars Ehrhart's claims because the duty King County owes under WAC 246-101-505 is one it owes to the public in general and not to Brian as an individual. Ehrhart replies that the failure to enforce exception to the public duty doctrine applies because King County failed to take appropriate action under WAC 246-101-505. The trial court agreed with Ehrhart, but we do not. Under WAC 246-101-505, King County owes a duty to the public as a whole. Because no exception applies in this case, the public duty doctrine bars Ehrhart's suit.

A. The Trial Court Misapplied the Public Duty Doctrine and Its Exceptions by Focusing on the Scope of King County's Discretion Rather Than on Whether It Owed a Duty to Brian Ehrhart

As described above, the trial court's resolution of Ehrhart's motion for partial summary judgment hinged on its mistaken belief that the public duty doctrine and the discretionary immunity doctrine are supposed to "meld" into a single analysis. VTP at 20. In all fairness to the trial court, our case law has not been a model of clarity on this point. The public duty and discretionary immunity doctrines often arise in the same cases, and we have not always made the distinction between them clear. *See Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 885-86, 288 P.3d 328 (2012) (Chambers, J., concurring)[5] ("[T]here is great confusion about

_____

[5] We have recognized Justice Chambers's concurring opinion in *Munich* as precedential because it received five votes from justices who also signed the majority

what our public duty doctrine jurisprudence means. We (and I include myself) have not been careful in what we have said in past cases. This has given rise to deeply held and greatly divergent views on the doctrine."). We take this chance to clarify the doctrinal roots and purpose of the public duty doctrine before turning to the merits of this case.

1. The Public Duty Doctrine, Rooted in Common Law Tort Principles, Bars Private Negligence Claims When a Government Breaches Duties Owed to the Public as a Whole

The public duty doctrine stands for a basic tenet of common law: "A cause of action for negligence will not lie unless the defendant owes a duty of care to [the]plaintiff." *Chambers-Castanes v. King County*, 100 Wn.2d 275, 284, 669 P.2d 451 (1983) (citing *Morgan v. State*, 71 Wn.2d 826, 430 P.2d 947 (1967)). "To establish a duty in tort against a governmental entity, a plaintiff must show that the duty breached was owed to an individual and was not merely a general obligation owed to the public." *Beltran-Serrano*, 193 Wn.2d at 549 (citing *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001) (plurality opinion)). We use the public duty doctrine as a focusing tool in order "to analyze whether a mandated government duty was owed to the public in general or to a

---

opinion. *See Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 550 n.8, 442 P.3d 608 (2019) (citing *Shizuko Mita v. Guardsmark, LLC,* 182 Wn. App. 76, 83 n.2, 328 P.3d 962 (2014) (recognizing stare decisis effect of Justice Chambers's concurrence in *Munich*)).

particular class of individuals." *Munich*, 175 Wn.2d at 888 (Chambers, J., concurring) (citing *Halvorson v. Dahl*, 89 Wn.2d 673, 676, 574 P.2d 1190 (1978)). The public duty doctrine guides a court's analysis of whether a duty exists that can sustain a claim against the government in tort.

The public duty doctrine "comes into play when special governmental obligations are imposed by statute or ordinance." *Beltran-Serrano*, 193 Wn.2d at 549 (citing *Munich*, 175 Wn.2d at 886 (Chambers, J., concurring)). When laws "impose[] duties on governments not imposed upon private persons or corporations," courts must determine whether governments owe those duties to an individual or the public as a whole. *Munich*, 175 Wn.2d at 887 (Chambers, J., concurring). "The traditional rule is that a regulatory statute imposes a duty on public officials which is owed to the public as a whole, and that such a statute does not impose any duties owed to a particular individual which can be the basis for a tort claim." *Baerlein v. State*, 92 Wn.2d 229, 231, 595 P.2d 930 (1979) (citing *Halvorson*, 89 Wn.2d at 676). "This traditional rule became known as the 'public duty doctrine.'" *Munich*, 175 Wn.2d at 888 (Chambers, J., concurring).

We first adopted the label "public duty doctrine" for this principle in 1983, *Chambers-Castanes*, 100 Wn.2d at 287, but the principle long predates the label. *See, e.g.*, 4 JOHN F. DILLON, COMMENTARIES ON THE LAW OF MUNICIPAL

CORPORATIONS § 1627, at 2840 (5th ed. 1911) ("Unless there be a valid contract creating, or a statute declaring, the liability, a municipal corporation *is not bound to secure a perfect execution of its by-laws*, relating to its public powers, and it is not responsible civilly for neglect of duty on the part of its officers in respect to their enforcement, although such neglect results in injuries to private persons which would otherwise not have happened."); *Goggin v. City of Seattle*, 48 Wn.2d 894, 899, 297 P.2d 602 (1956) ("[W]e have repeatedly held that a municipality may not be liable for injuries resulting from a neglect of duty on the part of its employees in failing to enforce its ordinances." (citing *Kitsap County Transp. Co. v. City of Seattle*, 75 Wash. 673, 674, 678, 135 P. 476 (1913) (holding "failure of the port warden to enforce an ordinance which provided for the keeping of the harbor free from debris" "would not render the city liable to respond in damages"))). We have reaffirmed this principle time and again, including just last year. *See Beltran-Serrano*, 193 Wn.2d at 549 ("To establish a duty in tort against a governmental entity, a plaintiff must show that the duty breached was owed to an individual and was not merely a general obligation owed to the public." (citing *Babcock*, 144 Wn.2d at 785)).

Our precedent recognizes "four exceptions to the public duty doctrine that provide for liability even in the face of otherwise public duties." *Id.* These

exceptions are "(1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship." *Id.* at n.7 (citing *Munich,* 175 Wn.2d at 879). "'If any one of the exceptions applies, the government is held as a matter of law to owe a duty to the plaintiff.'" *Id.* (quoting *Munich,* 175 Wn.2d at 879). But because the public duty doctrine essentially asks whether the government owes a duty to particular individuals, "an enumerated exception is not always necessary to find that a duty is owed to an individual and not to the public at large." *Id.* at 549. The enumerated exceptions simply identify the most common instances when governments owe a duty to particular individuals, and they often overlap. *See, e.g.*, *Campbell v. City of Bellevue*, 85 Wn.2d 1, 9-10, 530 P.2d 234 (1975) (noting both explicit and implicit exceptions to the general rule that statutory duties are owed to the public as a whole). But whether a court is evaluating the public duty doctrine generally or one of its exceptions specifically, the fundamental question remains the same: Does the government owe a duty to the plaintiff individually or merely to the public as a whole?[6]

_____

[6] Ehrhart and amicus Washington State Association for Justice Foundation invite this court to abandon the public duty doctrine as too confusing. They observe that another way to approach the duty question is through the test for an implied cause of action. Like the public duty doctrine, our implied cause of action analysis focuses on determining whether a statute or regulation creates a duty that can be enforced by a lawsuit in tort. *See State ex rel. Phillips v. Wash. State Liquor Control Bd.*, 59 Wn.2d 565, 570, 369 P.2d 844 (1962) ("Courts have consistently held that when a statute gives a new right and no specific remedy, the common law will provide a remedy." (citing *Nash v. Inhabitants of Sorrento*,

## 2. The Public Duty Doctrine Involves Questions of Duty, Not Discretion

The public duty doctrine is distinct from the discretionary immunity doctrine and addresses fundamentally different concerns. While the public duty doctrine involves questions of duty rooted in common law tort principles, discretionary immunity is rooted in the separation of powers principles inherent in our constitutional system of government. *See, e.g.*, *King v. City of Seattle*, 84 Wn.2d 239, 246, 525 P.2d 228 (1974) ("Immunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government."). And while the public duty doctrine developed from tort principles of the common law, the discretionary immunity doctrine emerged in response to Washington's waiver of its sovereign immunity in the 1960s. *See Evangelical United Brethren Church of Adna v. State*, 67 Wn.2d 246, 253, 407 P.2d 440 (1965) (explaining the waiver of sovereign immunity "does not render the state liable for every harm that may flow from governmental action" because "the official conduct giving rise to liability must be *tortious*" and "the legislative, judicial, and purely executive processes of government" "cannot and should not, from the standpoint of public policy and the

---

118 Me. 224, 107 A. 32 (1919))); *see generally Bennett v. Hardy*, 113 Wn.2d 912, 921-21, 784 P.2d 1258 (1990) (setting out three-step inquiry for when a tort claim may be based on violation of a statute or other law). We decline to abandon the public duty doctrine in deciding this case, while recognizing the *Bennett* test may also provide a helpful analysis.

maintenance of the integrity of our system of government, be characterized as tortious").

The trial court conflated the public duty doctrine with the discretionary immunity doctrine and so infused its ruling on a claimed exception to the public duty doctrine with irrelevant issues of executive branch discretion. Properly understood, the failure to enforce exception urged by Ehrhart is unconcerned with discretion and is inapplicable in this case.

B. Ehrhart Failed To Prove the Elements Necessary To Show the Failure To Enforce Exception to the Public Duty Doctrine Applies

The failure to enforce exception to the public duty doctrine recognizes that some statutes impose on government a duty owed to a particular class or category of individuals, such that the failure to enforce those statutes breaches a duty that can sustain an action in tort. To prove the failure to enforce exception applies, a plaintiff must show that

> [1] governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, [2] fail to take corrective action despite a statutory duty to do so, and [3] the plaintiff is within the class the statute intended to protect.

*Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987). Here, the trial court found Ehrhart established the first two factors "conditioned on a finding by the jury" and the third element "as a matter of law." VTP at 23. We review this

conditional grant of partial summary judgment de novo, engaging in the same analysis as the trial court. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (citing *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006)). We conclude that the trial court erred in its analysis of each element.

1. Ehrhart Fails Either To Identify a Violation of Law King County Is Responsible To Enforce, or To Establish That King County Had Actual Knowledge of Any Such Violation

Ehrhart bears the burden of showing King County is responsible for enforcing particular statutory requirements and possessed actual knowledge of a violation of those requirements. Ehrhart claims King County violated WAC 246-101-505 because it failed to determine "appropriate" action in response to a December 2016 hantavirus report and therefore knew of its own violation. This argument fails for three reasons.

First, Ehrhart does not establish—or even argue—that King County is responsible for enforcing particular statutory requirements. Ehrhart identifies WAC 246-101-505, entitled "Duties of the local health officer or the local health department," as the source of King County's responsibilities. But nothing in the duties listed requires local health departments to enforce anything against anyone;

the WAC simply outlines the departments' own responsibilities. WAC 246-101-505.

Ehrhart's argument seems to be that King County is responsible for enforcing against itself a regulation promulgated by a state agency. But a requirement to comply with regulations is different from a requirement to enforce those regulations. *See Woods View II, LLC v. Kitsap County*, 188 Wn. App. 1, 27, 352 P.3d 807 (2015) (rejecting "the unusual theory that the statutory requirement that the County failed to enforce was its *own* mandate to issue a timely permit" and observing "no Washington case . . . has applied the failure-to-enforce exception where the defendant government entity fails to take corrective action against *itself*."); *cf. Smith v. City of Kelso*, 112 Wn. App. 277, 284, 48 P.3d 372 (2002) (holding "the City cannot fail to enforce anything" where the ordinance at issue "does not regulate public conduct" and therefore "sets no requirements that the City can enforce").

Second, Ehrhart does not establish that King County had actual knowledge of a violation. Ehrhart claims that King County had an obligation to address the December 2016 report of hantavirus by determining *appropriate* action and that it took *inappropriate* action. Ehrhart argues King County's inappropriate action simultaneously (1) violated the WAC and (2) gave King County actual knowledge of that violation. The trial court apparently adopted Ehrhart's reasoning:

> [I]f the County did not determine an appropriate action, then I think that would be a statutory violation for purposes of the failure to enforce exception. If there was not an appropriate action determined, then the County would have been on notice of a violation and there would have been a duty to take corrective action. It all hinges on what is appropriate.

VTP at 22. But whether appropriate action was taken cannot establish that King County had actual knowledge of an alleged violation.

According to Ehrhart and the trial court's reasoning, if the jury finds that King County's actions in response to the December 2016 report of hantavirus were not appropriate, then King County would have been on notice that it was violating WAC 246-101-505, *even while King County thought it was complying with the WAC*. This conundrum comes from mistakenly applying a "failure to enforce" lens to a situation that does not involve a county enforcing a statute against a third party it knows to be violating the law. *Cf. Woods View II*, 188 Wn. App. at 27 ("[N]o Washington case . . . has applied the failure-to-enforce exception where the defendant government entity fails to take corrective action against *itself*."); *Smith*, 112 Wn. App. at 284 (holding "the City cannot fail to enforce anything" where the ordinance at issue "does not regulate public conduct"). Viewing all facts and inferences in favor of King County—as we must, *Ranger*, 164 Wn.2d at 552—reasonable minds can conclude only that King County did not know about a statutory violation and therefore owed no duty to Brian. *See Honcoop v. State*, 111 Wn.2d 182, 191, 759 P.2d 1188 (1988) (holding that because "the State had no actual knowledge of a

statutory violation at the time the [plaintiffs] suffered their damages, there is no duty that the State owes the [plaintiffs], and consequently no breach of duty to trigger the proximate cause of the [plaintiffs'] damages").

Finally, Ehrhart does not establish that King County's actions violated WAC 246-101-505.  Ehrhart relies on two Court of Appeals cases to argue a statutory violation exists for purposes of the failure to enforce exception when "there is a known hazard as well as a governmental obligation to address it" and the government fails to address the hazard.  Resp't Ehrhart's Opening Br. at 25-29 (citing *Livingston v. City of Everett*, 50 Wn. App. 655, 751 P.2d 1199 (1988); *Gorman v. Pierce County*, 176 Wn. App. 63, 307 P.3d 795 (2013)).[7]  But Ehrhart's reliance is inapposite.

Neither case involved a statutory violation by the government.  Instead, the governments' duty to act arose because private citizens violated ordinances relating to dangerous dogs.  *See Livingston*, 50 Wn. App. at 658 ("The code provides that it is unlawful to permit any animal to become at large, that any animal may be impounded and held when in violation of the code and that '[a]ny impounded animal shall be released to the owner or his authorized representative upon payment of

---

[7] Both Ehrhart's and King County's briefs, perhaps guided by the trial court's analysis, describe these cases as turning on the amount of discretion the government has under the applicable statutes.  But for the reasons explained above, the issue of discretion has no place in our analysis of the public duty doctrine and its exceptions.

impoundment, care and license fees if, in the judgment of the animal control officer in charge, such animal is not dangerous or unhealthy.'" (quoting former EVERETT MUNICIPAL CODE 6.04.140(E)(1) (1980))); *Gorman*, 176 Wn. App. at 81 (holding Pierce County was "required to act if it observes a violation of the potentially dangerous dog restrictions").

In both cases, the government officials had to determine what action would be appropriate in response to those statutory violations by third parties. *See Livingston*, 50 Wn. App. at 659; *Gorman*, 176 Wn. App. at 81. The defendants in *Livingston* and *Gorman* could be held liable because they failed to make the determination required by law. *See Livingston*, 50 Wn. App. at 659 (Everett failed to determine whether impounded dogs were dangerous before releasing them to their owners); *Gorman*, 176 Wn. App. at 81 (Pierce County failed to determine whether a dog was dangerous after receiving multiple reports of potentially dangerous behavior).

But here, King County in fact made a determination about how to respond to the December 2016 report of a hantavirus case; Ehrhart simply disagrees its determination was appropriate. As in *Livingston* and *Gorman*, the governmental duty was to make *a* determination, not to make a *particular* determination. Because King County made a determination as required by regulation, *Livingston* and

*Gorman* do not support Ehrhart's argument that King County violated WAC 246-101-505. Ehrhart advances no other basis on which to find King County violated the law.

Ehrhart has not shown that King County (1) is responsible for enforcing WAC 246-101-505 against itself, (2) violated WAC 246-101-505, or (3) had actual knowledge of an alleged violation. Ehrhart has therefore failed to satisfy the first element of the failure to enforce exception to the public duty doctrine.

> 2. Ehrhart Does Not Show King County Failed To Take Corrective Action Pursuant to Its Duty under WAC 246-101-505

In an extension of her argument under the first element of the failure to enforce exception, Ehrhart's argument under the second element is that the same action that allegedly violated WAC 246-101-505 also constituted King County's failure to take corrective action. Ehrhart does not articulate any other failure of King County to act. The trial court overlooked or misunderstood this element, explaining,

> The second element of the failure to enforce exception also kind of hinges on this factual determination of what is appropriate. I'm concluding today that, again, based on the jury's finding of inappropriateness, *the County would have had notice of failure to follow this WAC.* So the second element is met, conditioned on the jury's finding.

VTP at 23 (emphasis added). But the second element of the failure to enforce exception asks whether King County "fail[ed] to take corrective action despite a statutory duty to do so," not whether King County had notice of its own alleged

failure to follow the WAC. *Bailey*, 108 Wn.2d at 268. And, as noted above, a requirement to follow a WAC is distinct from a requirement to enforce that WAC against third parties. *See Woods View II*, 188 Wn. App. at 27.

The trial court misapplied the second element of the failure to enforce exception, which requires the plaintiff to show that the government "fail[ed] to take corrective action despite a statutory duty to do so." *Bailey*, 108 Wn.2d at 268. Ehrhart made no such showing below or in this court.

> 3. WAC 246-101-505 Is Intended To Protect the Public as a Whole and Does Not Support an Exception to the Public Duty Doctrine

Because the crux of the public duty doctrine is whether the government owes a duty to the plaintiff in particular or to the public as a whole, the third element of the failure to enforce exception is perhaps most important. Yet in briefing before this court, Ehrhart fails to even claim Brian fell within the class of people meant to be protected by WAC 246-101-505. *See* Resp't Ehrhart's Opening Br. at 25-31 (generally arguing the failure to enforce exception applies, but not explaining each element). The trial court, however, did analyze this element in its ruling:

> On the third element, I think I can answer that as a matter of law. I'm looking specifically to WAC 246-101-005, which sets forth the purpose of this whole notice policy, and I'm finding that 505 was intended to protect individuals who were at risk of contracting or who had already contracted infectious diseases, especially those that are unusual or rare. And so because Brian Ehrhart had contracted hantavirus, he would fall within the class of persons meant to be protected.

VTP at 23.  The trial court was right to examine WAC 246-101-005, which explains the purpose of reporting notifiable conditions, to determine whether Brian is within the class of individuals WAC 246-101-505 is meant to protect.  *See Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002) ("plain meaning is . . . discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question").

But we disagree with the trial court's conclusion.  WAC 246-101-005 provides:

> The purpose of notifiable conditions reporting is to provide the information necessary for public health officials *to protect the public's health* by tracking communicable diseases and other conditions. These data are critical to local health departments and the departments of health and labor and industries in their efforts to prevent and control the spread of diseases and other conditions. Public health officials *take steps to protect the public*, based on these notifications. Treating persons already ill, providing preventive therapies for individuals who came into contact with infectious agents, investigating and halting outbreaks, and removing harmful health exposures are key ways *public health officials protect the public*. Public health workers also use these data to assess broader patterns, including historical trends and geographic clustering. By analyzing the broader picture, officials are able to take appropriate actions, including outbreak investigation, redirection of program activities, or policy development.

(Emphasis added.) The plain language of this section makes clear that the class of people meant to be protected by WAC 246-101-505 is the public as a whole.  The regulation does not identify any particular group or category of individuals to whom governments owe a special obligation.  But "[t]o establish a duty in tort against a

governmental entity, a plaintiff must show that the duty breached was owed to an individual and was not merely a general obligation owed to the public." *Beltran-Serrano*, 193 Wn.2d at 549 (citing *Babcock*, 144 Wn.2d at 785). Because WAC 246-101-505 creates only a general obligation to the public and not a duty to any particular individuals, Ehrhart cannot meet the third element to the failure to enforce exception as a matter of law.

Ehrhart has not satisfied any element of the failure to enforce exception to the public duty doctrine. Nor did Ehrhart appeal from the trial court's denial of partial summary judgment on the rescue exception. Further, Ehrhart stipulated below that the other two exceptions to the public duty doctrine do not apply. Because no enumerated exception to the public duty doctrine applies and Ehrhart has not established any other duty King County owed to Brian as an individual, the public duty doctrine bars Ehrhart's claims against King County. We hold the trial court must grant King County's motion for summary judgment on remand.

II. The Trial Court Erred by Conditioning Its Grant of Partial Summary Judgment on Particular Findings of Fact

The fundamental premise of summary judgment is that it is appropriate only when "'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" *Locke v. City of Seattle*, 162 Wn.2d 474, 483, 172 P.3d 705 (2007) (alteration in original) (quoting CR 56(c)). We review

grants of summary judgment de novo. *Ranger*, 164 Wn.2d at 552 (citing *Malkasian*, 157 Wn.2d at 261). We consider all facts in the light most favorable to the nonmoving party. *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 485, 258 P.3d 676 (2011) (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." *Id.* at 484 (citing *Ranger*, 164 Wn.2d 545).

Ehrhart sought partial summary judgment mainly based on the failure to enforce exception to the public duty doctrine. The trial court "conclude[d] that the first element of the failure to enforce exception is met conditioned on a finding by the jury that the County's action was not appropriate" and that "[t]he second element . . . also kind of hinges on this factual determination of what is appropriate." VTP at 23. The court determined it could "answer [the third element] as a matter of law." *Id.* The court decided "to grant conditionally summary judgement on the failure to enforce exception and, again, we'll have to leave it to the jury to determine appropriateness." *Id.* at 24.

In addition to misapplying the failure to enforce exception, the trial court's ruling was procedurally improper. Summary judgment is appropriate only when there are no genuine issues of material fact. CR 56(c). Granting summary judgment

on the condition that a jury find a particular material fact—as the trial court did here—is incompatible with the very nature of summary judgment. The trial court could have appropriately granted summary judgment only on those elements it believed were resolvable purely as a matter of law. Or it could have denied summary judgment altogether. But its conditional partial grant was not an option under CR 56. Accordingly, we vacate the trial court's conditional partial grant of summary judgment.

## CONCLUSION

The trial court erred by conditionally granting summary judgment in Ehrhart's favor. King County's responsibilities under WAC 246-101-505 extend to the public as a whole, and King County owes no individual tort duty to Ehrhart. It is therefore entitled to summary judgment on its affirmative defense asserting the public duty doctrine. We remand to the trial court to grant summary judgment in King County's favor consistent with this opinion.

Stephens, C.J.

WE CONCUR:

Johnson, J.

González, J.

Madsen, J.

Gordon McCloud, J.

Owens, J.

Yu, J.

Wiggins, J.

Fairhurst, GPT

-27-